Donna L. HARTMAN, Respondent,

v.

Richard T. HARTMAN, Appellant.

No. WD 30883.

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Robert M. Liston, Sedalia, for appellant.

Mark T. Kempton, Sedalia, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

The decree entered in this case October 15, 1974 dissolved the marriage of the parties and ordered support for the three children paid by the husband. In January 1979, the wife caused execution to issue on account of alleged arrearages in those support payments. Contesting the matter of delinquency in payments, the husband moved to quash the execution and he now appeals the order which overruled his motion.

The relevant facts are not in dispute. Prior to the marriage, the husband had lived in Minnesota where he enlisted in the armed service. Duty assignment brought him to Missouri and he met and married the wife in 1958 and established a home. The children of the marriage were born in Missouri and they and the wife have remained Missouri residents throughout. In the course of his military service, the husband was stationed not only in Missouri but in various locations both within this country and in foreign territory.

At the date this marriage dissolution action was filed, August 30, 1974, the petition alleged that the husband was a non-resident of Missouri. The mailing address shown for notice indicates that he was on military duty overseas. The decree thereafter entered recites that the husband had entered his appearance, waived his rights under the Soldiers' and Sailors' Civil Relief Act and he appeared at trial by attorney. It may thus be concluded that personal jurisdiction over the husband was appropriately acquired and he is personally bound by the judgment as entered. The amount of child support was there assessed at $83.83 per month per child.

Some two years after entry of the decree, the husband retired from the military and returned to Minnesota where he now lives. On August 23, 1978, the oldest child of the marriage reached age eighteen and the husband at that time reduced the amount of child support payments made to the wife by the amount of $83.83, the sum attributable to support of the oldest child. This reduction in payments was appropriate, according to the husband, because the age of emancipation of minors in Minnesota, the state of the husband's residence, is eighteen.

The wife contends that Missouri law, which continues a father's support obligation for children until they reach age twen-

ty-one, controls as to this Missouri decree and she accordingly ordered execution to collect payments accruing after August 23, 1978, for support of the older child. Payments for the other children apparently are current and support generally is not in issue. The case therefore presents the question of whether the husband's residence in Minnesota has effectively modified the Missouri judgment to limit recovery for child support.

Before considering the only question raised, briefed and argued on this appeal, the conflict of laws issue, it is first necessary to define the basis on which we have assumed to reach and examine that issue.

The only pleading filed in the current phase of this case is appellant husband's motion to quash the execution. There, he alleges seven grounds upon which he contends the debt is not due. The only one of those claims which touches the question actually litigated appears as follows:

"6. That said execution was issued by Petitioner for the non-payment of Respondent's child support obligation for Richard Hartman, the oldest of the parties' children, who is now eighteen (18) years of age or is otherwise emancipated, and for whom Respondent owes no duty of support; . .. ."

Even at the hearing on the motion, appellant raised no contention on the record that he relied on Minnesota law to exonerate him from support liability, much less argue the conflict of laws question now before this court. Appellant did offer in evidence his exhibits A and B, which were received without objection. Appellant offered no explanation as to the source of the documents which constitute these exhibits. They contain minimal self-identification indicia and it is only after recourse to material dehors the record, as hereafter noted, that the origin of these exhibits may be found. Thus, when the motion was submitted to the trial court for ruling, the issue of law now posed had not been defined of record.

Sections 490.080 and 490.110, RSMo 1978, provide that courts of this state shall take judicial notice of the laws of other states provided reasonable notice is given to adverse parties. Rule 55.21(b) provides that judicial notice of laws of other states and of their judicial decisions shall be taken where the pleading states reliance upon such law is involved. A necessary conclusion to be drawn from the content of the rule is that the notice required by the statute has by rule been prescribed to be allegation in a pleading.

Beyond doubt, respondent would have been entitled to object to consideration and application of Minnesota law under these circumstances where appellant gave no notice, as required by the rule, that foreign law was contended to apply and where the trial record includes no argument upon the subject and little if any assistance by counsel to inform the court what Minnesota law purportedly was applicable. The court's judgment, however, which included findings of fact and conclusions of law, conveys the impression that the issue of Minnesota law was assumed throughout to be the pertinent issue and respondent has made no objection on this account. We must therefore conclude that deficiencies in the pleading and the evidence have been waived by respondent and cannot be considered here because non-jurisdictional error, however serious, is waived if not raised on appeal. *State ex rel. Mo. Pac. R. Co. v. Moss*, 531 S.W.2d 82, 86 (Mo.App.1975). Despite this handicap of considering an issue on appeal which was neither pleaded nor argued of record before the trial court, we review the trial court's decision on this single issue briefed here and with the assumptions as noted.

Because appellant contends the benefit of Minnesota law in the matter of obligation for child support and particularly the age of emancipation, it is first necessary to examine that law. By recourse to independent research, we have ascertained that the present Minnesota statute governing court ordered maintenance payments for support of children of divorced parents is Minn.St. 518.57. There, the court entering the divorce judgment is authorized to provide

"* * * [for] the maintenance of any child of the parties as defined in this act * * *." The definition statute is Minn.St. 518.54, subd. 2, as amended by Laws 1973, c. 725 § 74, which defines a "child" as an individual who is under eighteen years of age or is physically or mentally handicapped from providing his own support.[1] A subsequent amendment to § 518.54, Laws 1974, which introduced no-fault divorce, and Laws 1978 left unchanged the age of majority at eighteen.

The revision in Minnesota Statutes which changed the age of majority to eighteen and limited court ordered support in divorce cases accordingly was effective June 1, 1973. Thus, as of the date the decree was entered in the subject case, October 15, 1974, a Minnesota court having before it the same parties and subject matter could have ordered payment of support for the children here only until they reached age eighteen.

The husband cites and relies upon *Federbush v. Mark Twain Parkway Bank*, 575 S.W.2d 829 (Mo.App.1978) as entitling him to the benefit of Minnesota law and to a revision in the support obligation adjudged by the decree entered in Missouri. In *Federbush*, mother and child moved to Massachusetts, where the age of majority is eighteen, after a Missouri decree dissolved the marriage and ordered payment by the father of monthly child support. When the Federbush child reached age eighteen, the father stopped support payments and the mother ordered execution to collect that which the Missouri judgment had awarded. The opinion held the father obligated for support payments until the child became twenty-one and concluded that the change in the child's domicile was irrelevant. The case also includes the following statement upon which appellant here grounds his contention that his removal to Minnesota as his place of residence exonerates him from liability to support his children after they reach age eighteen:

"When ruling upon a father's obligation to support his child, the law of the father's domicile determines the child's status as a minor." *Federbush, supra*, at 831.

■ While the quoted statement literally read and applied to the subject case would relieve appellant of the obligation under the judgment here for support of his children beyond age eighteen, at least as long as appellant continues to reside in Minnesota, we decline to accept the tendered precedent to control disposition of this case. We conclude, rather, that appellant is bound by the terms of the judgment to continue payment of support for his children, in accordance with Missouri law, until each reaches age twenty-one or is earlier emancipated.

First, the general statement in *Federbush* is dicta, unnecessary to and beyond the scope of the issue presented for decision. The principles upon which the *Federbush* court grounded its decision that Missouri law bound the father by an unchallenged decree to support his child to age twenty-one were that internal law of Missouri controls where the cause of action accrued here and the acts were done and the rights were acquired here. It was merely by the coincidence of the facts that the result was also compatible with the statement respecting situs of the father's domicile. Reference to post-judgment events respecting the domicile of the father and the child was superfluous and not of dispositive significance. The case upholds the integrity of the Missouri judgment which imposed the support obligation according to Missouri law upon parties subject to the jurisdiction of its courts.

Second, the authorities cited in *Federbush* as supporting the general statement of principle are inapposite because they do not emanate from similar facts nor do they treat of the same legal question. *Yarborough v. Yarborough*, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269 (1933), the first cited case, arose when a child resident in South Carolina sued her father, living in Georgia, for

---

1. With the content of Minnesota Statutes at hand, it becomes apparent that appellant husband's trial exhibit B repeats the test of

Minn.St. 518.54 both before and after 1978 revisions and was taken from a copy of annotated Minnesota statutes.

support. The father defended on the basis of an earlier judgment of a Georgia divorce court which had set the limits of his support obligation. The question was whether South Carolina was obligated to give full faith and credit to the Georgia judgment. The court held the Georgia judgment conclusive on the matter because that judgment had been entered with full jurisdiction of the cause and the parties. Subsequent removal of the child to South Carolina was irrelevant.

The other case cited, *Berkley v. Berkley*, 246 S.W.2d 804 (Mo.1952), was an action brought by a mother against the father, from whom she was separated but not divorced, to recover expenses paid for the support of their child. At the time of suit, the mother and child were living in California and the father was in Missouri. The father defended on the ground that although Missouri law recognized the cause of action asserted, none was stated under California law which required an advance agreement to compensate. The court held the father answerable under Missouri law, the state of his domicile, on the ground that as a Missouri resident, he was subject to the legislative jurisdiction of the state. Thus, the question in *Berkley* was conflict of legislative jurisdiction, an issue available only in the area of a pre-judgment dispute and not appropriate where the parties' rights are established by an uncontroverted judgment.

Neither *Yarborough* nor *Berkley* support the general proposition announced in *Federbush* that the law of the father's domicile determines the minority status of a child. In fact, that issue was not contested in either case. So, too, *Yarborough* and *Berkley* have no application in the subject case which does not address issues of full faith and credit or conflictive legislative jurisdiction.

■ In the subject case, no extra-territorial extension of the Missouri judgment seeks recognition of its terms in Minnesota. The wife has garnished the husband's military retirement pay by writ served upon the Commander, AFAC/AJUA, Denver,

Colorado. The husband does not contest the sufficiency of this process. At issue is whether the Missouri courts will enforce their own judgment, not whether constitutional principles of full faith and credit or conflicting state laws require a choice of law. Even were recognition of the Missouri judgment in Minnesota to be in contest, however, no different result would obtain.

The Minnesota Supreme Court has recognized acquisition of a vested right by a decree which, at the time entered, conferred upon the custodial spouse an award of child support payable until the child reached age twenty-one. In *Brugger v. Brugger*, 229 N.W.2d 131 (Minn.1975), the court held that the obligation of a father to pay support for his children under a pre-June 1, 1973 Minnesota divorce decree was not affected by the change in the statute and his support responsibility continued until the children reached age twenty-one.

When entered, the Missouri judgment here obligated the father under applicable Missouri law to continue contribution for support of his children until each reached age twenty-one. *Brugger v. Brugger, supra*, demonstrates it to be the policy in Minnesota to recognize a child support obligation as that which prevailed under the applicable law when the judgment was entered. Appellant's reliance upon the statutory age revision in Minnesota is unavailing even under Minnesota law.

Finally, in a choice-of-law decision, if that be the question here, legitimate state interests and practical considerations preclude adopting by rote the general statement of principle in *Federbush*. The wife and children have throughout been residents of Missouri where, by legislative declaration, the custodial spouse is entitled to rely on support contribution from the non-custodial spouse until children reach age twenty-one. When appellant entered his appearance in this case he submitted himself to the jurisdiction of the Missouri court and application of Missouri law to the case. Having done so and the issues having been reduced to judgment, the option for appellant to advocate the choice of Minnesota law is no long-

er available as it would have been were appellant to have contested the applicability of Missouri law when the cause was yet pending.

This case is not in the traditional sense a true conflict of laws case. Judicial jurisdictions are not in competition to entertain the case and the typical questions of residence, minimum contacts and jurisdictional submission do not require a decision as to the power of the court to hear the case against a particular defendant. Neither is there a presently viable dispute as to application of Missouri or Minnesota law because the time for application of substantive law passed when judgment was rendered. More accurately, this case is what has been described by Robert A. Leflar, quoting from Brainerd Currie, Selected Essays on the Conflict of Laws 180, et seq. (1963), as a "False Conflicts" case [2].

By this description it is not intended to suggest that no conflict of laws exists, but that there is a conflict of governmental interests. Professor Leflar there suggests in a choice-of-law issue of this nature, if one state has a major governmental interest, it should apply its law, especially if it is the forum state. In the subject case, Missouri's governmental interest is in establishing the age of majority for children and in providing liability for support of children until they reach majority. To serve this interest, Missouri law must prevail and require of appellant satisfaction of the judgment debt.

The order overruling appellant's motion to quash execution is affirmed.

All concur.

---

2. Symposium: Leflar on Conflicts, 31 So. Carolina Law Review 409, 465 (1980).