(628 P.2d 234)
No. 52,151

KAREN LAJEANNE FERGUSON, *Appellee,* v. KEITH DWAIN FERGUSON, *Appellant.*

Opinion filed May 8, 1981.

*Leonard M. Robinson,* of Topeka, and *Hal D. Meltzer,* of Turner and Boisseau, Chartered, of Great Bend, for appellant.

*Michael J. Friesen,* of Friesen & Rintoul, P.A., of Garden City, for appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

ABBOTT, J.: This is an appeal in a divorce action from a judgment that created a trust fund to be used to educate the minor children of the parties. Three issues are presented.

The defendant, Keith Dwain Ferguson, argues that the trial court had no jurisdiction to provide funds to be used by his children after they reached adulthood, and that all funds placed in trust and not expended for educational purposes during the children's minority should be returned to him and not equally divided between defendant and his ex-wife. He relies on *Allison v. Allison,* 188 Kan. 593, 363 P.2d 795 (1961). The plaintiff, Karen LaJeanne Ferguson, contends that this court has no jurisdiction to hear this appeal for the reason that defendant has failed to properly perfect it.

Plaintiff and defendant have two children. Jo Ellen was born August 9, 1962, and completed high school in December 1979. Cheryl Sue was born July 16, 1963, and completed high school in December 1980. This case was tried in the fall of 1979. The trial court divided the marital assets, awarded custody of the two children to plaintiff and provided for child support in the amount of $180 per month per child. Neither party complains about that part of the decision. Defendant complains because the trial court

ordered life insurance policies and IDS stock (mutual funds) converted to cash and invested in an interest-bearing account to be used to help meet the educational expenses of the two children. The trial record indicates the testimony concerning the value of these assets came from the defendant who testified the IDS stock was worth $5,600 and one life insurance policy had a value of $3,800. It appears there were other life insurance policies that may have had some cash surrender value, but that fact is not clearly established in the record and there is no indication of their possible value. Defendant filed a motion after judgment was entered stating that the correct net value of the IDS stock was $9,000, not $5,600. In addition to the conversion of the IDS stock and life insurance policies, the trial court ordered the defendant to contribute an additional $6,000 to the educational fund. Defendant was given the option of transferring assets or waiting until the first child started to college and then paying $350 per month. If defendant had elected to pay $350 per month, the entire $6,000 would have been paid into the fund prior to the youngest child's reaching 18 years of age. The trial court retained jurisdiction over the fund for the express purpose of ensuring that it would be used equitably and fairly for the education of the two daughters. The judgment provided that if the children failed to satisfactorily pursue a college education, or if they dropped out of college, any remaining funds would be equally divided between plaintiff and defendant.

Defendant filed a motion which he labeled a motion to modify findings of fact. We are of the opinion that it also encompassed a motion to alter or amend the judgment. The trial judge refused to hear and determine the motion, and this appeal follows. We are satisfied we have jurisdiction to hear the appeal; K.S.A. 60-2103 provides that the running of time for appeal is terminated by a timely motion made pursuant to K.S.A. 60-252(b) (amend or make additional findings of fact), or to K.S.A. 60-259 (alter or amend the judgment).

The record before us does not specifically state that the trial judge intended the educational fund to be available, at least in part, to meet the financial requirements of the children's college education after their minority ceased. Defendant argues that it was so intended, but plaintiff concedes that existing case law prohibits the use of such funds after the period of minority. In

essence, plaintiff argues that authority exists to set up such a fund, and that any funds not used for educational purposes should be divided equally between plaintiff and defendant.

Our Supreme Court has considered similar issues in a number of cases. The defendant relies on *Allison v. Allison,* 188 Kan. 593. There, the court required a father to establish a trust fund for the education of the minor child by paying a set sum per month for a set period which terminated, as it does in the case at bar, prior to the child's becoming an adult. The order provided that if the child failed to enroll in or withdrew from college, the money remaining in the fund was to be returned to the father, his heirs or assigns. The Supreme Court held that the trial court had power to order the father of a minor child to establish a trust fund to provide for the college education of the child. The court stated that statutory authority limited that power to the child's minority. G.S. 1959 Supp. 60-1510.

In *Herzmark v. Herzmark,* 199 Kan. 48, 427 P.2d 465 (1967), the trial court ordered a father to establish a $6,000 trust fund to be used for a minor child's college education. The money was to be paid into the trust during the child's minority, and any of it that was not used for the child's education was to be returned to the father, his heirs or assigns. The payments to the daughter were to cease on her attaining legal majority. *Herzmark* was decided under the then relatively new Code of Civil Procedure (K.S.A. 1965 Supp. 60-1610). The father argued that 60-1610 related to support and education, but the provision for setting property apart referred only to support. The Supreme Court affirmed the trial court as to the trust fund, stating at pages 56-57:

"Such an educational fund may not extend beyond or make provision for a child of the marriage beyond minority. In event the child does not attend college for the period intended the fund should be made returnable to the funding party, his heirs or assigns. Such a plan must be definite and have for its purpose a suitable college education for the child. The plan must be reasonable within the parent's ability to provide."

In *Clark v. Chipman,* 212 Kan. 259, 267, 510 P.2d 1257 (1973), the Supreme Court ruled that a marriage settlement agreement that provided for the support and education of children past the age of majority was valid and binding upon the parties. The Supreme Court next had occasion to determine what effect the statutory shortening of the period of minority would have on an

agreement to provide support for a child until the child attained the age of majority. K.S.A. 1972 Supp. 38-101. The court held in two cases that the duty to support ceased when the statutory age of majority was reached. *Jungjohann v. Jungjohann,* 213 Kan. 329, 516 P.2d 904 (1973); *Rice v. Rice,* 213 Kan. 800, 518 P.2d 477 (1974).

Both parties to this appeal agree that the above line of cases is controlling, and that the father's obligation to provide a college education for the children ceased on their 18th birthday. We do note that in 1975, after the above line of cases had been decided, the legislature in considering House Bill No. 2212 amended K.S.A. 60-1610, which appears at first glance to be significant. The only change the bill originally was designed to make was to reduce the period that prohibits marriage to another person from 60 to 30 days (K.S.A. 60-1610[*h*]). The bill was amended on the floor of the Senate (Senate and House Journals 1975, p. 510) to insert a sentence in section (a) as follows:

"Any order requiring either parent or both parents to pay for the support of any child until the age of majority shall terminate when such child attains the age of eighteen (18) years, unless by prior written agreement approved by the court such parent or parents specifically agreed to pay such support beyond the time such child attains the age of eighteen (18)."

That sentence is now incorporated in K.S.A. 1980 Supp. 60-1610(*a*).

The possible significance of that amendment is the first sentence states that the court shall make provisions for the *support and education* of the minor children. Then, presumably with full knowledge of the Supreme Court cases set forth in this opinion, the legislature provided that *support* payments shall terminate when the child attains the age of eighteen. The existing statute had already been interpreted to provide the same result provided for in the amendment. Thus, either the legislature intended that the court be empowered to provide for the education of children past the age of eighteen or it was merely amending the statute to reflect the decisions of the Supreme Court and overlooked adding "and education." We are convinced that if the legislature had intended to extend parental duties to require those financially able to do so to provide education for their children who have attained majority, it would have used positive language to so indicate its intention rather than have the duty inferred by the

courts as a result of its unexplained failure to include the words "and education" in the sentence added to the statute. This is particularly true in light of *Herzmark*, wherein the Supreme Court allowed property of the parents to be set aside for educational purposes even though the legislature in giving courts discretionary authority to do so mentioned only *support*, not *support and education*. We thus conclude the legislature did not intend to grant discretionary authority to the courts to extend the duty of a parent who is financially able to do so to provide for an education past a child's 18th birthday. The legislature is cognizant of the hardship that frequently results for a significant number of children from child support payments terminating prior to the completion of high school. It is also aware of the necessity for a college education or for vocational training. Whether to impose a duty on a parent to provide for a formal education or for vocational training is a legislative decision and not one for the courts.

In our opinion, the trial court had authority to require the parents to contribute to an educational fund. The court order required the money to be paid in during the children's minority. The money could be used only for educational expenses incurred prior to the 18th birthday of each child. As we see it, the ultimate question is whether the trial court abused its discretion in requiring an educational fund in the manner and amount ordered, and in providing for distribution of any remaining funds in the manner ordered.

The children were approaching college age and both had expressed a desire to attend college. The parents have the financial ability to pay for the children's college education. The total amount ordered to be paid into the fund may be larger than what is necessary to provide for an education to age 18. It appears that the property was divided equally between plaintiff and defendant. Thus, in all likelihood, the IDS stock and the cash value of the life insurance policies would have been divided equally between plaintiff and defendant if they had not been placed in the educational fund. We view the court's order as to the stock and life insurance policies to be a recognition that both parties have a responsibility to educate the two children, and the court started the educational fund with assets that otherwise would have been divided between the parties. We would not hesitate to

approve a property settlement agreement that divided the property involved equally between plaintiff and defendant, and thus we hold that the trial court did not abuse its discretion as to that portion of the educational fund.

The remaining $6,000 obviously was supplied solely by the defendant, which raises two questions: whether an additional $6,000 was necessary, and whether the trial court erred in ordering any portion of it to be divided equally between plaintiff and defendant in the event it would not be used to educate the children.

Under the circumstances, we cannot say that the total amount of the educational fund is so large as to amount to an abuse of discretion as a matter of law. The record is not clear as to the total value of the IDS stock and life insurance, and defendant must bear the responsibility for that; for it is defendant's vague testimony of the values, and his lack of knowledge of the value of his assets, that make unclear what the total amount is. If we accept the figures he testified to at trial, the total value is $15,400 (IDS stock, $5,600; life insurance, $3,800; and $6,000 to be paid from his assets); and if we accept his statement that the IDS stock is worth $9,000, the total amount is $18,800. The trial judge specifically stated he would retain jurisdiction to see that the funds were not squandered. Without knowing where the children would be admitted to school, the court could not know how large a fund would be needed. If the children had the ability and good fortune to be admitted to a prestigious private college, the fund provided would not be excessive for its intended purpose.

It obviously has been the opinion of the Supreme Court that in most instances the party who contributes the funds is the one who should regain any unexpended funds. As we view the Supreme Court cases, we are of the opinion that it is not mandatory for the court to always provide for the return of unexpended funds to the parent who contributed the funds if it is otherwise fair to divide them. We are hampered by the trial court's failure to make either a written or oral explanation of why the decision was made to divide the remaining assets. It may well be that it was intended that the $6,000 be used first. It was provided that defendant could pay the money at the rate of $350 per month when the first child started to college. That sum would provide board and room plus some spending money each month. If that was the trial court's

intention, we would affirm the decision, as the defendant has an income from his salary and bonuses much larger than plaintiff's, and the plaintiff has more debts to service. If that was not the trial court's intention, and funds that were contributed solely from defendant's separate property (the $6,000) remain to be distributed, then that part remaining from defendant's $6,000 contribution should be returned to him. That part of the judgment ordering any unexpended portion of the $6,000 contributed solely by defendant to be divided equally between the parties is vacated and the case remanded for findings and conclusions concerning the court's intention as to the order, if any, for which the funds should be expended.

Upon remand, it will be necessary for the trial court to hold a hearing to ascertain what amount of the educational fund would have been used for the reasonable college expenses of the two girls prior to their 18th birthdays. The defendant should not be allowed to profit from his failure to comply with the court order. The test to be used thus is not what was actually spent prior to the 18th birthdays, but what would reasonably have been expended if the defendant had complied with the court order. Any remaining funds should then be distributed to the parties as set forth in this opinion.

Affirmed as modified.