William F. ROBERTS, Respondent,

v.

CITY OF ST. JOSEPH, Missouri, a Municipal Corporation, Appellant.

No. WD32578.

Missouri Court of Appeals, Western District.

May 11, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 23, 1982.

Application to Transfer Denied Sept. 13, 1982.

---

Richard J. Yocum, Acting City Atty., St. Joseph, for appellant.

Thomas R. Summers, Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, for respondent.

Before SOMERVILLE, C. J., SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Plaintiff sued for a writ of mandamus to force the defendant City to submit his grievance to arbitration. The trial court issued the writ, and the City appeals. We affirm.

In September 1978, the City advertised a job opening and solicited applications for the position of Chief Master Mechanic of the Fire Department. Plaintiff, a classified employee in the Fire Department, applied for the position which would represent a promotion for him. Plaintiff was neither interviewed nor tested for the position, and another individual named Sale was selected.

Plaintiff thereupon filed a grievance under Rule XV of the City's Personnel Manual, alleging that the manner in which the position of Chief Master Mechanic had been filed violated Rules V through VIII of the personnel procedures. That grievance was presented in due course to plaintiff's immediate supervisor and then to the department head, all as required by Rule XV. Those steps proving unsuccessful, plaintiff proceeded to the next step with an appeal to the City Personnel Board. After a hearing, the Board issued its findings and recommendations as follows:

"RECOMMENDATION 1. That the Chief Master Mechanic job be reopened, readvertised, and that all interested persons be given an opportunity to apply and that the procedures outlined in the Memorandum of Understanding and Personnel Manual be followed.

"RECOMMENDATION 2. That in the next job posting for Chief Master Mechanic, it be clearly outlined where the job would lie, in the Fire Department ranks, or civilian."

Notwithstanding the Board's recommendations, the Mayor refused to reopen the Chief Master Mechanic job. Plaintiff then made timely demand that his grievance be submitted to binding arbitration as the final step in the handling of grievances under Rule XV. The Mayor refused to name an arbitrator or to allow the City's participation in arbitration. That action precipitated the present lawsuit.

The City challenges the ruling of the trial court requiring the City to submit to binding arbitration, on the grounds that: (1) Rule XV is an amendment to the Personnel Manual which was illegally adopted by resolution of the City Council; in that such matter pertained to employment of personnel with respect to which the Council was required to act by ordinance; (2) the resolution adopting Rule XV was further illegal in that the purported grievance machinery imposed additional duties in the Personnel Board, which could only be accomplished by ordinance; (3) the attempted provision for binding arbitration constituted an illegal delegation of legislative power to a private person; and (4) plaintiff did not meet the prerequisite provided in Rule XV for pursuit of arbitration.

## I.

The City's points 1 and 2 both relate to the question of whether the adoption of resolution XV had to be by ordinance rather than resolution. Since these points have much in common, they will be discussed together.

The grievance procedure was placed in Rule XV of the Personnel Manual for the first time by Resolution No. 76659. The procedures to be followed were set forth as follows:

"3. *Adjustment Procedure. Step 1.* Informal discussion between an employee (or group of employees) and the immediate supervisor shall take place to attempt to resolve the problem. A prompt and courteous examination of the facts to reach a satisfactory adjustment shall be attempted within five (5) working days. The supervisor shall promptly communicate his decision and supporting reasons to the employee(s).

"*Step 2.* If the problem has not been resolved by the immediate supervisor, the employee may request, either orally or in writing, that an informal review be made by the next higher-level supervisor, usually a department head, in whom authority exists to take corrective action.

"*Step 3.* The higher-level supervisor; (usually a department head) shall attempt to hold a conference within five (5) working days after he has received the employee's request for an informal review.

"*Step 4.* The employee must be in attendance; he may present his own case or may present the problem through a representative of his own choosing at the informal review and at any subsequent stage of the adjustment procedure. The higher-level supervisor, (usually a department head), may designate a representative to represent him at the informal review and at any subsequent stage of the adjustment procedure.

"*Step 5.* Following the oral presentation of the complaint to the higher-level supervisor, (usually the department head), if the complaint or grievance has not been resolved to the satisfaction of all concerned, the employee or his representative shall prepare and present the grievance, in writing, to the Personnel Board of the City of St. Joseph, within ten working days, for further review and adjustment. The higher-level supervisor, (usually the department head), shall prepare a similar statement of his position and submit it to the Personnel Board within ten (10) working days with a copy to the employee.

"*Step 6.* The Personnel Board shall conduct a hearing of the grievance appeal to the board within fifteen (15) working days. The Personnel Board shall render its written findings, conclusions, and its recommendations for adjustment of the grievance within ten (10) working days of the termination of the hearing. Such findings, conclusions, and recommendations shall be sent to the parties concerned and to the Mayor, Council and Personnel Director.

"*Step 7.* If the employee is not satisfied with the results of the Personnel Board hearings, the employee may request, in writing, within five (5) working days, that the grievance be submitted to arbitration for adjustment. The employee and his representative, if he shall choose to have a representative, and the Mayor or his designated representative, shall meet to select an arbitrator.

\* \* \* \* \* \*

"The decision of the arbitrator on the appeal shall be final and conclusive, except that any decision pertaining to pay, retirement benefits, or the expenditure of money, shall be subject to approval by ordinance."

In support of its contention that said provision was illegal because it was adopted by resolution rather than by ordinance, the City relies upon two separate provisions of its Charter. The first Charter provision so relied upon is Section 2.13(38) which provides that the council shall have power by ordinance to "[p]rovide for the employment of all personnel necessary to carry on the function of all departments and agencies of the city." The second Charter provision

which the City relies upon is Section 7.4(5) which provides that the Personnel board shall have power to "[p]erform such other duties with reference to personnel administration ... as the council may require by ordinance."

However, there is still another provision of the City Charter which is more directly applicable to the circumstances here and which should be considered controlling. This further provision is contained in Section 7.6, which provides:

"Merit system rules.

"The personnel board shall hold a public hearing on the rules recommended by the personnel director. After such hearing, the board shall approve or reject the rules wholly or in part, or may modify them and approve them as so modified. The rules approved by the board shall then be submitted to the council and shall become effective when approved by the council. ..."

This section of the Charter goes on to state that the merit system rules shall include provisions for open competitive tests, standardization and classification of positions, certification of eligible candidates, appointments from the eligible list, causes for discharge and preference in favor of war veterans.

█ The Personnel Manual does set forth the merit system rules referred to in and required by Section 7.6. A grievance procedure is a reasonable adjunct to those rules, and was specifically adopted as part of the Personnel Manual. The method by which such adoption was to be accomplished was specified by Rule 7.6. All that was required was that the rules approved by the Board be "approved by the council." Since there was no requirement stated that such approval must be by ordinance, the approval could properly be in the form of a resolution. *Eichenlaub v. City of St. Joseph*, 113 Mo. 395, 21 S.W. 8 (1893). *See also Haskins v. City of De Soto*, 35 S.W.2d 964 (Mo.App. 1931).

In view of the above conclusion that Resolution No. 76659 was properly adopted, it becomes unnecessary to consider plaintiff's alternative argument that the City is estopped from denying the validity of this Resolution.

The City's points 1 and 2 are overruled.

## II.

The key provision which gives rise to the principal controversy in this case is the one which calls for binding arbitration as the final step of the grievance procedure. This type of provision has long been widely used in the private business sector, and that use has been highly favored by the courts. See especially *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

In the sector of public employment, however, the use of binding arbitration has lagged far behind. When such arbitration was first introduced for governmental employees, that type of provision met strong initial judicial resistance.[1] The present trend, however, especially in handling

---

1. No Missouri appellate decision has been cited or found dealing with an arbitration provision affecting public employees. However the initial resistance to the related issue of mandatory collective bargaining in the public sector is reflected by *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (Mo.banc 1947) which declared that municipalities cannot constitutionally engage in collective bargaining with labor unions representing city employees. Since that decision, labor relations in the public sector have been liberalized by statute, Sections 105.500 to 105.530, RSMo 1978. The constitutionality of the "meet and confer" provision was upheld in *State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35 (Mo.1969). The legislature has further evidenced sensitivity to the rights of public employees by providing for certification by the State Board of Mediation of collective bargaining representatives on their behalf, Section 105.525, the constitutionality of which was recognized in *Curators of the Univ. of Mo. v. Public Serv. Emp. Loc. No. 45*, 520 S.W.2d 54 (Mo.banc 1975), and *State ex rel. O'Leary v. Missouri State Bd. of Mediation*, 509 S.W.2d 84 (Mo.banc 1974). *See also Sumpter, et al. v. City of Moberly* (No. WD32584 decided March 30, 1982), in which this court held that if city officials reach a collective bargaining agreement with a union of city employees and if the city council thereafter adopts that agreement, then the agreement becomes binding and enforceable against the city.

grievances under existing contracts, is to recognize and enforce provisions for binding arbitration. As stated in *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L.Rev. 129, 130 (1968), "a trend has developed toward arbitration as the final step in public employment grievance procedures . . . binding arbitration of minor disputes is gaining acceptance at state and local levels." The same trend is noted in Annot., 68 A.L.R.3d 885, 892 (1976).

■ The main problem which must be confronted, and which is strongly urged by the City, is the question whether Rule XV turns the arbitrator loose to make decisions affecting the public without being given adequate guidelines and standards. It is quite uniformly conceded that there cannot be a delegation of legislative responsibility without setting forth reasonable standards to control the administrative action. On the other hand, it is also generally agreed that there may be delegation when proper standards are created. The latter proposition is recognized by the City itself in its brief where it says: "The case law also allows the delegation of legislative authority to an administrative body when sufficiently definite standards are prescribed for the exercise of such authority."

In determining whether or not adequate standards have been provided, the cases also generally recognize the need for flexibility in the field of labor relations. See for example *City of Biddeford v. Biddeford Teachers Association,* 304 A.2d 387 (Me. 1973). This yielding to the necessities for flexibility is consistent with the Missouri decisions dealing generally with the problem of delegation of legislative authority. *Howe v. St. Louis,* 512 S.W.2d 127 (Mo.banc 1974); *Milgram Food Stores, Inc. v. Ketchum,* 384 S.W.2d 510 (Mo.1964); *State ex rel. Ludlow v. Guffey,* 306 S.W.2d 552 (Mo. banc 1957).

■ For the purposes of the present case, no doubt can exist as to there being ade-quate guidelines. Here the whole question submitted by plaintiff as his grievance was the charged failure of the City to comply with merit system Rules V through VIII. Those rules are published in the Personnel Manual and are quite definite. Rule V, for example, requires competitive examination, provides for examination ratings and calls for notification of examination results. Rule VI provides generally for the establishment of eligibility lists. Of very special importance in this case is the promotion policy set forth in Rule VII that "[v]acancies in positions above the lowest rank in any category in the classified service shall be filled so far as practical by the promotion of employees in the service. . . ."

The question submitted by plaintiff's grievance was whether these very specific rules had been followed. The rules mentioned gave entirely adequate guidelines and standards to be applied by the arbitrator. The contention by the City that there were not sufficient standards must be rejected.

The City argues strongly that a lack of proper guidance results from the definition of the term "grievance" contained in paragraph 1 of Rule XV. Grievance is there defined as follows: "A grievance exists when an employee feels dissatisfied or annoyed with some aspect of his work over which he has no control, including, but not limited to, working conditions, administrative procedures and personnel policies, disciplinary procedures and actions, employee health or safety, physical facilities, materials or equipment, rates of compensation and retirement benefits." The City says in its brief: "It is entirely conceivable that an employee who felt 'dissatisfied' or 'annoyed' with the fact that the Fire Station did not have a new refrigerator, a new air-conditioner, a new fire truck, a new pole to slide down, etc. could file a 'grievance'. . . ." [2] If a situation should arise where a city employee attempts to present a complaint along the lines just mentioned, that will be

---

**2.** Note should be taken that any arbitration with respect to these hypotheses would not be binding on the City because of the provision in

Rule XV that any decision by the arbitrator pertaining to the expenditure of money "shall be subject to approval by ordinance."

the occasion upon which the court may have to determine whether the definition of "grievance", in Rule XV is overly broad. That question simply does not arise under the facts of the present case. Plaintiff here has presented a grievance limited purely and simply to the application of the published rules governing the merit system. Even if the grievance system as written might not afford adequate guidelines under other circumstances, that does not affect or require an adverse ruling to the arbitration of the present grievance. The hypothetical facts posed by the City are not so connected or interdependent with the problem presented in the instant case as to make one dependent upon the other. It cannot be presumed that the City Council would not have provided for binding arbitration of grievances relating strictly to the merit system without also making like provision for other matters such as the desirability of "a new sliding pole." Binding arbitration respecting merit system promotion is therefore severable for purpose of constitutionality. *Stine v. Kansas City*, 458 S.W.2d 601 (Mo.App.1970); *Barhorst v. City of St. Louis*, 423 S.W.2d 843 (Mo.banc 1968).[3]

The further argument made by the City that binding arbitration involves a delegation of legislative powers to a private person who does not hold public office has been raised and rejected in other jurisdictions. Annot., 68 A.L.R.3d 885 (1976). The general reasoning of these cases is that the selection and vesting of arbitration power in the arbitrators constitutes the arbitration panel as in fact a public body.

The City's point 3 is overruled.

### III.

The City argues that plaintiff is not eligible to demand arbitration under Step 7 of the grievance procedure, for the reason that he does not meet the requirement stated in the rule under which he must be "not satisfied with the results of the Personnel Board

hearings." The City points to plaintiff's letter dated November 21, 1978, in which he stated: "On November 15, 1978, the Personnel Board rendered a decision. I agree with the decision, but not with the results of the Personnel Board hearing, in that Mayor Gordon J. Wiser has stated to the news media that he will retain Earl Sale as the Chief Master Mechanic." The City contends that this letter shows plaintiff was fully satisfied with what the Personnel Board did, and that his quarrel rather related to the position taken by the Mayor.

■ The City takes too restricted a view of the language in question. When Rule XV speaks of the employee not being satisfied "with the results" of the Board hearing, it has reference to everything which was to occur as part of Step 6. It is to be noted that the Personnel Board does not have the final say as to what action should be taken on the grievance. The Board did have such right of final determination under the old rules which called for the Personnel Board to render "findings, recommendations *and decision.*" In sharp contrast, Rule XV as amended provides that at the close of the hearing held by it, the Personnel Board shall make "findings, conclusions, and recommendations [which] shall be sent to the parties concerned and to the Mayor, Council and Personnel Director."

Under the Charter, the Mayor is the supreme executive power of the City, while the Council holds the legislative power. The Personnel Board is an independent agency "deriving its power from the council." Charter Section 7.3. It appears to be the design of Rule XV that the Personnel Board, in the exercise of legislative delegation, shall make findings which are then subject to implementation or veto by the Mayor in the exercise of his role as head of the executive department. The present Rule XV plainly does not give the Personnel Board any right to implement its findings without the concurrence of the Mayor. It must be concluded that when Rule XV

---

**3.** The City injects a complaint in the argument portion of its brief to the effect that the right of an employee to file whimsical grievances will be unduly costly to the City. Procedurally, this complaint could be ignored because not included in the Points Relied On. On the merits, the complaint can be answered by saying the cost effectiveness of grievance machinery is a matter for legislative determination.

speaks of "the results of the Personnel Board hearings," it is speaking of the end result of what finally happens by way of concurrence or nonconcurrence on the part of the Mayor. If the Mayor rules against the complaining employee (as the Mayor did in the present case) then the employee has every right to say that he "is not satisfied with the results."

To construe Rule XV otherwise would result in a strange anomaly. According to the City's argument, plaintiff would have a right to demand arbitration if both the Board and also the Mayor went against him, but he does not have a right to arbitration if the Board agrees with him but the Mayor disagrees. There would be less reason to grant a right to arbitration if plaintiff's grievance had so little merit that he could not convince either the Board or the Mayor. When the grievance contains sufficient merit that the Board agrees with him, then it would seem that he has more rather than less right to insist on arbitration when the Mayor goes to the contrary.

The City's point 4 is overruled. None of the points on appeal being meritorious, the judgment is affirmed.

All concur.