Vanita THOMPSON,
Petitioner-Respondent,

v.

Ralph William THOMPSON,
Respondent-Appellant.

No. WD32514.

Missouri Court of Appeals,
Western District.

Nov. 16, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 4, 1983.

Application to Transfer Denied Feb. 23, 1983.

James B. Lowe, Kurner, Schwegler, Lowe & Fishman, Kansas City, for respondent-appellant.

John I. Moran, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, for petitioner-respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

The husband appeals from a judgment of the circuit court ordering him to pay support until age twenty-one of a child now past eighteen years of age. The issue presented is the power of the Missouri court to modify a Kansas divorce judgment so as to change the age of majority from eighteen to twenty-one years of age.

The husband has raised and preserved that issue as a denial of full faith and credit to the Kansas judgment pursuant to U.S. Const. art. IV, § 1. The resolution of that issue involves the construction of the federal Constitution which, pursuant to Mo. Const. art. V, § 3, vests jurisdiction in this court. No case has explicitly asserted the jurisdiction of this court to construe the federal or state Constitutions, but such jurisdiction has been exercised, *Roberts v. City of St. Joseph,* 637 S.W.2d 98 (Mo.App. 1982). The amendments to art. V, § 3, adopted August 3, 1976, do not include, as prior versions of that section did, specific reference to questions of construction of the state and federal Constitutions. The most recent amendment of art. V, § 3, voted upon at the recent general election, House Joint Resolution 57 of the 81st General Assembly, 1982 Mo.Legis.Serv. 380 (Vernon), continues the omission of such jurisdiction in the Supreme Court of Missouri. It must be considered that construction of the organic law of Missouri and of the United States is vested in this court since not enumerated within the exclusive jurisdiction of the Supreme Court of Missouri. Cases such as *City of St. Louis v. Tinker,* 542 S.W.2d 512 (Mo. banc 1976), decided upon different constitutional language, no longer control the jurisdictional issue.

The District Court of Wyandotte County, Kansas, granted a divorce to the wife, Vanita Thompson, in 1968. The decree awarded her custody of the parties' three minor children and, under a subsequent modification, ordered child support for the three children. Under Kan.Stat.Ann. § 60–1610(a) (1976), child support payments must cease at age eighteen. The relevant language of the statute is:

> Any order requiring either parent or both parents to pay for the support of any child until the age of majority shall terminate when such child attains the age of eighteen (18) . . . .

By judicial decision, this statute has been construed to prohibit any extension of support beyond age eighteen despite compelling circumstances. *Brady v. Brady,* 225 Kan. 485, 592 P.2d 865 (1979); *Ferguson v. Ferguson,* 6 Kan.App.2d 287, 628 P.2d 234 (1981).

The wife moved to Missouri, which was also the then residence of the husband. The parties were involved in a variety of proceedings revolving around the enforcement of the Kansas decree during 1978. These proceedings culminated in the Jackson County Circuit Court entry of a show cause order in 1979 requiring the wife to show cause why she should not be cited for contempt of court for failure to comply with the court's orders concerning child visitation. The parties entered into a stipulation to modify the decree and to provide for specific visitation privileges. The stipulation further provided that the Jackson County Circuit Court was to have "jurisdiction to enforce and modify the original Decree of Divorce entered December 12, 1968 in the District Court of Wyandotte County, Kansas, and that . . . [the Jackson County Circuit Court] . . . shall retain jurisdiction to entertain and rule upon any and all future motions or applications to modify such original Decree of Divorce." The decree was modified to include the specific

visitation privileges agreed upon by the parties.

In 1980, the wife petitioned the court for a modification of the Kansas decree to increase the child support payments. The husband filed his answer and asserted that his obligation to support his oldest son, who was then eighteen years old, had ceased on his eighteenth birthday when the son was emancipated under Kansas law. The husband contended that the Missouri courts are obligated by the doctrine of full faith and credit to apply the substantive law of Kansas.

At the time of the hearing on this motion, the parties and their three children were still Missouri residents. The husband consistently and by specific citation to U.S. Const. art. IV, § 1, asserted that under the Kansas law his obligation to support ceased at age eighteen, and the Kansas judgment therefore was binding upon the Missouri court.

The circuit court then made the following finding:

> That although the Court believes that there is pertinent case law which supports the proposition that the law of Kansas ought to be applied to the parties before the Court in this matter, the Court is persuaded by the stipulations entered into by the parties referenced earlier, dated October 1979, that the law of Missouri ought to apply because the parties had so agreed; and, therefore, has ordered and based this decision in this matter upon said rationale.

The husband appeals from that order. His sole point on review is that the court erred in applying Missouri law as to the age of emancipation, thereby offending the full faith and credit clause, which requires Missouri courts to give to the Kansas decree the effect it would have under Kansas law.

 If the trial court was correct in its assumption that the stipulation of the parties empowered the trial court to apply the Missouri law without regard to the Kansas decree and its effect under the full faith and credit clause, the order should be affirmed. The order may not be sustained on

that basis. The stipulation refers to "jurisdiction." It is hornbook law that the parties may not stipulate the jurisdiction of a court in the sense of subject matter jurisdiction. Parties may, of course, consent to jurisdiction of the person by appropriate entry of appearance or by undertaking to litigate in a court. In either of these senses of the term "jurisdiction," the stipulation is redundant in this case. The circuit court has subject matter jurisdiction over questions of support and maintenance. § 452.-300 RSMo 1978; § 452.340 RSMo 1978; *Gomez v. Gomez,* 336 S.W.2d 656 (Mo. banc 1960). The husband and wife are now Missouri residents, and there is no question of jurisdiction of the parties. The stipulation of the parties would have to be read as a waiver of the right to assert the defense of full faith and credit.

 It may even be questionable that the protection of the full faith and credit clause is a personal constitutional right that a party may waive. The full faith and credit clause is directed to the relationship of the states to each other.

> The very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.

*Milwaukee County v. M.E. White Co.,* 296 U.S. 268, 276–77, 56 S.Ct. 229, 233–34, 80 L.Ed. 220 (1935). The full faith and credit clause "prescribes a rule by which courts, Federal and state, are to be guided" and "has nothing to do with the conduct of individuals or corporations." *Minnesota v. Northern Securities Co.,* 194 U.S. 48, 72, 24 S.Ct. 598, 605, 48 L.Ed. 870 (1904). Further, a state "may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause, when its courts have general jurisdiction of the sub-

ject-matter and the parties." *Broderick v. Rosner*, 294 U.S. 629, 643, 55 S.Ct. 589, 592, 79 L.Ed. 1100 (1935). A fair reading of these cases would indicate that the full faith and credit clause is a direct Constitutional limitation on the courts, not a personal right or defense that can be waived by the parties.

 Even if the parties could waive the directive of the full faith and credit clause, the parties' stipulation in this case does not meet the requirement of an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Courts will not presume acquiescence in the loss of fundamental rights. *Ohio Bell Tele. Co. v. Public Utilities Commn. of Ohio*, 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093 (1937). In *Taylor v. Taylor*, 122 Cal.App.3d 209, 175 Cal.Rptr. 716 (1981), the court required the father, long-domiciled in California, to pay arrearages on a child support decree entered in Missouri for children who were over the age of eighteen, but younger than twenty-one. In holding that the judgment must be accorded full faith and credit according to Missouri law, the court rejected the husband's contention that the wife waived any remedy available to enforce the Constitutional full faith and credit provision merely because she registered the Missouri judgment in California pursuant to URESA. Likewise, the ambiguous stipulation of the parties in the case at bar could not constitute a waiver of the full faith and credit clause. There is nothing in the stipulation of the parties to suggest such an intent. The stipulation refers only to "modifications" and expressly recognizes the existence of the Kansas decree. When the stipulation was entered into, the dispute as to the eighteen-year-old child was not even before the court. The issue at the time of the stipulation was the visitation rights of the father.

Before turning to the dispositive issue in the case, it is necessary to discuss one of the major contentions of the parties. It is contended that application of the Missouri law, concerning the age of majority, is justified by the interest of the State of Missouri in the children and their status. It is also contended that the Missouri law is the better rule of law.

By these contentions, the case has been briefed and argued as if it were a choice of law case. Most of the cases that have been cited are cases in which the full faith and credit clause is implicated in a choice of law situation. A review of the principles will demonstrate that this is not a choice of law situation.

 Confusion in the briefs and the cases is engendered by the use of the word "jurisdiction" without any definition of the sense in which it is used. Missouri has jurisdiction, or power to act, in the sense of subject matter or personal jurisdiction. Some of the cases refer to the jurisdiction of the court to apply its own law. In the choice of law situation, Professor Leflar has utilized the term "legislative jurisdiction," R. Leflar, American Conflicts Law § 3 (3d ed. 1977). This phrase expresses the notion of jurisdiction as the power to apply the forum's law in the choice of law situation, as limited by the organic law. The traditional limitations upon legislative jurisdiction arising from the organic law are the requirements of the due process clause of the fourteenth amendment of the United States Constitution and the full faith and credit clause, art. IV, § 1. The due process clause prevents the exercise of legislative jurisdiction by a state when the choice of law is "fundamentally" unfair to one of the parties. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 326, 101 S.Ct. 633, 647, 66 L.Ed.2d 521 (1981) (Stevens, J., concurring); *Home Ins. Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930). The full faith and credit clause, on the other hand, prevents an interference with the sovereignty of the sister state by the foreign state's choice of law. *Hague, supra*, 449 U.S. at 322, 101 S.Ct. at 645 (Stevens, J., concurring). The full faith and credit clause is involved in the choice of law situation only by

directing that a State, when acting as the forum for litigation having multistate as-

pects or implications, respect the legitimate interests of other States and avoid infringement upon their sovereignty. The Clause does not, however, rigidly require the forum State to apply foreign law whenever another State has a valid interest in the litigation.

*Allstate Ins. Co. v. Hague, supra,* 449 U.S. at 322–23, 101 S.Ct. at 645 (Stevens, J., concurring). When a true choice of law issue is presented, the court must conform to those mandates in determining which law will apply. *Allstate Ins. v. Hague* has been extensively commented upon. Among those commentaries is Professor Leflar's article, *Choice of Law: States' Rights,* 10 Hofstra L.Rev. 203 (1981). Professor Leflar concludes that the opinion in *Allstate* makes it clear that the Constitutional limits of a state's formulation of its choice of law rule are less severe than heretofore. Despite this relaxation of Constitutional limitations upon choice of law determinations, the parties' emphasis in the instant case upon the interests of the competing states and the cases citing these factors is misplaced.

The instant case does not fall within these choice of law precepts. *Allstate Ins. Co. v. Hague, supra,* expressly excepts it from its scope. "Different considerations are, of course, at issue when full faith and credit is to be accorded to acts, records and proceedings, outside the choice of law area, such as in the case of sister state court judgments." *Allstate, supra,* 449 U.S. at 308 n. 10, 101 S.Ct. at 637–638 n. 10.

The starting point for inquiry in such cases is the full faith and credit clause and its concomitant federal statute, 28 U.S.C. § 1738 (1976) (enacted in present form in 1948).

The constitutional command is that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." Article IV, § 1 of the Constitution also provides that "Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." And Congress has enacted that

judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

*Barber v. Barber,* 323 U.S. 77, 79, 65 S.Ct. 137, 138, 89 L.Ed. 82 (1944).

There are recognized exceptions to the application of the rule arising from the language "law or usage in the courts of the State from which they are taken." One of the recognized areas of exception is the effect of decrees of alimony sought to be enforced in sister states.

 A divorce decree as to past-due installments of alimony is within the protection of full faith and credit and may not be modified as long as the courts in the state which rendered the decree have no discretion to modify such accrued installments. *Sistare v. Sistare,* 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910); *Green v. Green,* 239 Ala. 407, 195 So. 549 (1940). However, future installments under a sister state's decree may be modified as long as such installments are subject to modification by the courts in the state rendering the decree. *People of New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Restatement (Second) of Conflict of Laws § 109 (1971). "[I]t is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." *Halvey, supra,* at 615, 67 S.Ct. at 906.

When the case presents an issue of the effect of a prior judgment not modifiable in any way in the state of rendition, the case law defining the scope of the full faith and credit clause is sparse.

In *Yarborough v. Yarborough,* 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269 (1933), the U.S. Supreme Court reversed the Supreme Court of South Carolina and held that under the facts of that case, South Carolina courts were precluded by full faith and credit from modifying a Georgia child support order which was non-modifiable under Georgia law. In that case, the superior court of Fulton County, Georgia, rendered a

decree of divorce in 1929 and ordered the husband to set up a trust for the support of the parties' minor child. Under Georgia law, payment of the lump-sum child support order relieved the father of his obligation to support his minor child. The law of that state also precluded a minor child from maintaining a suit in his own name for an allowance for maintenance. In 1930, the parties' minor child, who was living with her grandfather in South Carolina, brought an action in South Carolina to order her father to make further provision for her support. The South Carolina court denied the father's assertion that it was barred by full faith and credit from modifying the Georgia decree and ordered him to make additional monthly payments for the support of his minor child. The U.S. Supreme Court held that the full faith and credit clause applies to an "unalterable decree of alimony for a minor child." South Carolina did not have the power to impose a duty of support on the father who has "long been domiciled in Georgia" and has "fulfilled the duty which he owes ... [his minor child] ... by the law of his domicile and the judgment of its court." *Yarborough, supra,* at 212, 54 S.Ct. at 185. The court, however, reserved for consideration the question "whether South Carolina would have power to require the father, if he were domiciled there, to make further provision for the support, maintenance, or education of his daughter." *Id.* at 213, 54 S.Ct. at 185. Thus, the precise issue of the application of full faith and credit to the instant case has been reserved by the Supreme Court of the United States.

The California Supreme Court was confronted with a similar situation in *Elkind v. Byck,* 68 Cal.2d 453, 67 Cal.Rptr. 404, 439 P.2d 316 (banc 1968). The parties in that case were divorced in Georgia in 1957. The wife was awarded custody of their minor child and the husband was ordered to establish a trust to provide for the child's support. The Georgia court incorporated into the decree the parties' agreement that the child support order was non-modifiable and the parties waived any rights which might accrue to them in the event that a statute might be passed granting additional rights. The wife and child subsequently moved to New York, the husband moved to California, and in 1965 the wife initiated proceedings in California under URESA for increased child support. The husband asserted that the *Yarborough* case was controlling and that the California court did not have power to impose upon him additional obligations as to child support. The California Supreme Court held California law applied and that the *Yarborough* case was inapposite for two reasons. First, the *Yarborough* decision was based on the father's continued domicile in Georgia which was not the situation in *Elkind, supra.* Second, Georgia had adopted URESA since the *Yarborough* decision and the Georgia decree was subject to URESA, which "expressly reserves to the state of the obligor's residence the power to apply its law of support notwithstanding the decree." *Elkind, supra,* 67 Cal.Rptr. at 408, 439 P.2d at 320. Because of the alternative URESA basis for the decision, *Elkind* offers no direct support for the resolution of the issue reserved in *Yarborough, supra.*

The Missouri courts have been confronted with two situations in which differing ages of majority were asserted as defenses to further support. In *Federbush v. Mark Twain Parkway Bank,* 575 S.W.2d 829 (Mo. App.1978), the father was ordered to pay child support under a Missouri divorce decree. The wife subsequently moved to Massachusetts with the parties' minor child where the age of majority was eighteen and the husband, who continued to reside in Missouri, ceased making payments when the child turned eighteen. The wife sought to collect for accrued payments by execution and garnishment. In *Hartman v. Hartman,* 602 S.W.2d 932 (Mo.App.1980), the father also was ordered to pay child support under a Missouri divorce decree. In that case, the wife continued to reside in Missouri with the parties' minor children and the husband moved to Minnesota. He later reduced the child support payments ordered by the Missouri decree when the oldest child reached eighteen, pursuant to

Minnesota law which provided that children reach majority at eighteen. The wife then caused execution to issue to collect the arrearages. In both cases, the Missouri Court of Appeals held that the Missouri age of majority applied. Neither case is helpful in the present situation since neither involved the effect of a foreign decree on Missouri domiciliaries. Missouri courts were applying Missouri law.

The appellant-husband in the instant case has directed this court's attention to *Mosher v. Mosher,* 25 Wash.2d 778, 172 P.2d 259 (1946). In that case, the parties were divorced in Oregon in 1930. The wife was awarded custody of their two minor children, and the husband was ordered to pay child support until each child reached the "age of majority." At the time the decree was entered, a female person reached majority at age eighteen under Oregon law, but the statute was later changed to provide that all persons reach majority at age twenty-one. The wife and children subsequently moved to the state of Washington, and the wife brought an action in that state's circuit court in 1943 to recover accrued child support payments under the Oregon decree. The father contended that his duty of support ceased when his child became eighteen since the age of majority was eighteen at the time the decree was entered. The Washington Supreme Court first noted that the action was simply one of enforcement and did not involve a modification of the decree. The court then held that the issue was a substantive question and must be determined "in accordance with the law of the place where the decree was entered." *Mosher, supra,* 172 P.2d at 262. This amounts to but an application of the holding in *Yarborough, supra.*

It must be concluded that the reserved question in *Yarborough* remains unanswered in any authoritative way. In *Scholla v. Scholla,* 201 F.2d 211 (D.C.Cir.1953), the dissenting opinion in footnote 12 at page 217 hazards the view that there is little doubt the Supreme Court will find power in the forum state under the reserved question in *Yarborough.* The cases cited in the footnote give no authoritative answer to the problem.

The problem posed by the question reserved in *Yarborough* requires a construction of article IV, § 1 of the United States Constitution. The task of construction requires the weighing of competing policies in the light of the reasons for the policy determinations. The competing policies are those of the full faith and credit clause in protecting the sovereignty of Kansas and the policy of Missouri with respect to the protection of domiciled minors in the area of parental support. There are both logic and reasoned analagous authority to permit a determination that the Missouri policy should prevail. Justice Stone's dissent in *Yarborough,* 290 U.S. at 213, 54 S.Ct. at 185, provides the logical beginning point for the position that the policy of the full faith and credit clause does not grant carte blanche to a rendering state to infringe on the legitimate interests of a forum state simply by virtue of a valid judgment entered in the rendering state. In that well-known dissent, concurred in by Justice Cardozo, Justice Stone would have allowed South Carolina to modify a Georgia support decree *despite* the father's continued domicile in Georgia. Justice Stone recognized that "there comes a point beyond which the imposition of the will of one state beyond its own borders involves a forbidden infringement of some legitimate domestic interest of the other," *id.* 290 U.S. at 215, 54 S.Ct. at 186, and that that "point" was especially likely to be crossed in cases of child support.

> Whatever may be said of the local interest which was deemed controlling in those cases in which this Court has denied to a state judgment the same force and effect outside the state as is given to it at home, it would not seem open to serious question that every state has an interest in securing the maintenance and support of minor children residing within its own territory so complete and so vital to the performance of its functions as a government that no other state could set limits upon it.

*Id.* at 225, 54 S.Ct. at 190.

The reasoning and language of Justice Stone's dissent are of even greater force

when the only remaining contact of the rendering state, the domicile of the father, no longer exists as a consideration. Illustrative of the regard paid to the domiciliary state's interest in children "residing within its own territory" is the Uniform Child Custody Jurisdiction Act, 9 U.L.A. 111 (1979), which "limits custody jurisdiction to the state where the child has his home or where there are strong contacts with the child and his family," Commissioners' Prefatory Note, Uniform Child Custody Jurisdiction Act at 114 (1979). The Uniform Act, adopted by forty-two states including Kansas and Missouri, gives jurisdictional preference to the state of the child's domicile, not that of a parent or any state in which jurisdiction can be exerted in accordance with due process constraints.

The Restatement (Second) of Conflict of Laws § 103 (1971) provides a safety valve to protect a forum state's overriding domestic interests from too literal application of the full faith and credit clause:

A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State.

This section may be a distillation of the Restatement Reporter's thoughts as advanced in Reese and Johnson, *The Scope of Full Faith and Credit to Judgments*, 49 Colum.L.Rev. 153, 171–77 (1949). Professor Reese and his co-author reasoned that the full faith and credit clause was a necessary component to the federal Constitution, which bound the several states to a central government. Yet, it was suggested that this obvious purpose of the full faith and credit clause not be recited as justification for blind application of the clause so as to override the legitimate interests of the states as they might arise in exceptional circumstances. "[I]t seems entirely reasonable to suppose that from time to time cases will arise where the very nature of our federal government demands that the national policy of res judicata should give way

before the peculiar interests of a single state." *Id.* at 164. Professor Reese's views have not gone uncriticized. *See, e.g., Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 289–90, 100 S.Ct. 2647, 2665, 65 L.Ed.2d 757 (1980) (Rehnquist, J., dissenting, joined by Marshall, J.); Ehrenzweig, *The Second Conflicts Restatement: A Last Appeal for Its Withdrawal,* 113 U.Pa.L.Rev. 1230, 1240 (1965).

██ The underlying rationale of § 103 of the Restatement (Second) Conflict of Laws and the *Yarborough* dissent is sound. A support decree governs a continuing relationship—that of the child and his parent. It is impossible for a rendering state to take into account another state's interests that may arise in the future. In the case at hand husband, wife, and children were domiciliaries of Kansas at the time the support decree was entered. But by the time the modification of that decree, which is the subject of this appeal, was sought, *all* the parties had moved to Missouri. Missouri is responsible for the welfare of the Thompson children, and Missouri continues a father's support obligation until his child reaches the age of twenty-one. *Hartman v. Hartman,* 602 S.W.2d 932 (Mo.App.1980). Mr. Thompson, the husband, became subject to Missouri law upon establishing a domicile in this state. Missouri need not accede to the judgment of a sister state concerning a continuing matter that has become a purely internal affair of Missouri. *See Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980); *United Farm Workers v. Arizona Agricultural Employment Relations Bd.,* 669 F.2d 1249 (9th Cir.1982); *Webb v. Arizona Public Service Co.,* 95 N.M. 603, 624 P.2d 545 (App. 1981).

██ It can be argued that Missouri should respect the integrity of the Kansas decree by virtue of the fact that it was rendered by a sister sovereign's court of general jurisdiction whose jurisdiction over the parties is unquestioned. Indeed, a distinction was drawn in *Thomas, supra,* between the full faith and credit to be afford-

ed decisions of administrative tribunals and those of courts of general jurisdiction, on the basis that the former had no authority even to consider the law of other interested states. *Id.* 100 S.Ct. at 2661. That distinction does not compel Missouri to honor the Kansas decree in the instant case, however, because while the Kansas court had the power to take into account the interests of other states, Missouri's interest did not exist at the time the Kansas court entertained the case. Nor does the purpose of the full faith and credit clause, to transform "an aggregation of independent, sovereign States into a nation," *Sherrer v. Sherrer,* 334 U.S. 343, 355, 68 S.Ct. 1087, 1092, 92 L.Ed. 1429 (1948), require the sovereignty of Kansas as incorporated in its support decree to be recognized as continuing to the exclusion of the interests of Missouri, the only sovereign with any legitimate continuing interest in the matter. The action of the Missouri court in modifying the order of child support for these parties despite the original Kansas decree does nothing to impair the sovereignty or power of Kansas as to these parties no longer resident in Kansas.

In weighing the interests of Kansas under the policy reasons for full faith and credit and the interests of Missouri in the maintenance and support of minor children domiciled in Missouri, the balance must be struck on the side of Missouri.

The decree of the circuit court ordering payment of child support to continue as ordered until the minor children reach the age of twenty-one is affirmed.

All concur.