In Re the Marriage of John H. RU-
DOLF, Jr., petitioner, Appellant,

v.

Dolores M. RUDOLF, Respondent.

No. C3–83–590.

Supreme Court of Minnesota.

May 18, 1984.

Jack S. Jaycox, Bloomington, for appel-
lant.

Patrick J. O'Meara, Minneapolis, for re-
spondent.

SIMONETT, Justice.

We decide that the full faith and credit
clause does not preclude Minnesota from
modifying future alimony installments in a
Nevada divorce decree, and we reverse the
trial court's contrary ruling and remand.

In November 1965, after 12 years of marriage, a valid divorce decree was entered in Nevada divorcing John and Dolores Rudolf. The decree required, among other things, that John pay Dolores alimony of $250 a month from and after December 31, 1966. Mr. and Mrs. Rudolf were domiciled in New Jersey but John Rudolf established the requisite Nevada residency to petition for the Nevada divorce.

A few years later, in 1969, both parties moved to Minnesota. In April 1974, both parties, still living in Minnesota, executed a stipulation amending their Nevada divorce decree to transfer custody of the one remaining minor child to John, who was moving to Hawaii, and to make adjustments in the child support obligations. The stipulation provided that "both parties consent to the jurisdiction of the Minnesota Courts in this matter." Although the stipulation authorized either party to obtain a court order amending the divorce decree to incorporate the stipulation, this action was never taken.

John moved to Hawaii and then, apparently in 1975, moved to California, where he has ever since resided. Dolores has always remained a resident of Minnesota.

In January 1981, John brought a motion in Hennepin County District Court to terminate his alimony obligation under the Nevada decree, claiming that under Minnesota law there had been a substantial change in the financial circumstances of the parties since the 1965 divorce. On December 30, 1981, the district court made its order finding that there had been a substantial change in circumstances, cancelling accumulated alimony arrearages of $450, and ordering that the Nevada decree be amended to suspend any further alimony payments until financial circumstances warranted. Dolores then moved to have the trial court's findings and conclusions set aside. This motion was denied by an order dated May 28, 1982. Apparently, John did not serve a notice of filing of this order on Dolores.

Seven months later, in December 1982, Dolores, with new counsel, again moved to have the trial court's order of December 30, 1981, absolving John of any alimony obligations, set aside. She asserted, for the first time, that Nevada law was controlling and that under Nevada law the alimony award was a final, nonmodifiable judgment. The district court agreed with Dolores and, by order of February 9, 1983, it set aside its prior order and awarded Dolores $3,950 for alimony arrearages up to the date of hearing on the motion and reinstated the alimony provision of the Nevada decree. Petitioner-appellant John Rudolf appeals this last order.

First of all, it is undisputed that under Nevada law the alimony provision in the 1965 Nevada decree, whether for accrued or prospective alimony, is not subject to modification.[1] Thus, the main issue before us is whether the Full Faith and Credit Clause of the Federal Constitution, art. 4, § 1, precludes Minnesota from modifying

---

1. The Nevada statute in effect at the time of the 1965 divorce read:

   In divorce actions, installment judgments for alimony in support of the wife shall not be subject to modification as to accrued installments. Installments not accrued at the time a motion for modification is filed, shall not be modified unless the court expressly retains jurisdiction for such modification at the final hearing.

   Nev.Rev.Stat. § 125.170(1) (1964). The Nevada court did not expressly retain jurisdiction in the Rudolf decree to modify the alimony award so that it was nonmodifiable. Subsequently, in 1975, Nevada replaced the foregoing statute with the following:

   If a decree of divorce, or an agreement between the parties which was ratified, adopted or approved in a decree of divorce, provides for specified periodic payments of alimony, the decree or agreement is not subject to modification by the court as to accrued payments. Payments pursuant to a decree entered on or after July 1, 1975, which have not accrued at the time a motion for modification is filed may be modified upon a showing of changed circumstances, whether or not the court has expressly retained jurisdiction for the modification.

   Nev.Rev.Stat. § 125.150(7) (1983). Since the Rudolf decree was entered prior to July 1, 1975, the new statute leaves the alimony award still nonmodifiable.

the Nevada alimony award. *See also* 28 U.S.C. § 1738 (1982).

■■■ 1. We first dispose of a threshold issue. Appellant argues that respondent's full faith and credit defense should not even be considered because the parties stipulated in 1974 to Minnesota jurisdiction, and, in addition, because respondent's motion asserting the defense was untimely. There is no merit to either argument. When the parties stipulated to the jurisdiction of the Minnesota courts "in this matter," they were referring only to the matter of child custody and support. Moreover, a stipulation for subject matter jurisdiction is not the same as a stipulation waiving the right to assert the defense of full faith and credit. There was no intentional surrender of a known right here, and we decline to find any waiver. Regarding the contention that respondent's motion to reconsider was untimely when made 7 months after the trial court's order, we cannot say the trial court exceeded its discretion in entertaining the new motion. We conclude, therefore, that the full faith and credit defense is before us on the merits.

■■■ 2. As to the alimony installments that had accrued and were delinquent at the time petitioner-appellant brought his motion to modify the decree, we hold that the trial court, by its last order of February 9, 1983, correctly awarded this sum to respondent Dolores Rudolf. The full faith and credit clause requires recognition and enforcement by a state of installments which have accrued under an unalterable judgment for alimony rendered in a sister state. *Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910). Here the amount of such arrearages, as found by the trial court in its order of December 30, 1981, was $450.

3. The matter of prospective alimony is not so easily resolved. *Sistare* did not address the question of future installments. In *Yarborough v. Yarborough*, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269 (1933), the United States Supreme Court held that South Carolina was required to give full faith and credit to a child support provision in a Georgia divorce decree. There the minor child, a resident of South Carolina, sought additional support money from her father even though the father, still a resident of Georgia, had satisfied his support obligation under the Georgia decree. In affording full faith and credit to the Georgia decree, the Supreme Court stressed that the father "long has been domiciled in Georgia," but the Court expressly left open whether South Carolina would have the power to award further support money if the father were domiciled in South Carolina. Our case, of course, is unlike *Yarborough* in that John Rudolf has not resided in Nevada in the nearly 20 years since the Nevada decree was entered.

For two reasons we conclude that Minnesota need not give full faith and credit to Nevada's rule against prospective modification of the alimony award in this case. The first reason derives from the statutes of Nevada. The provision governing modifiability of support awards permits modification only if "the court expressly retains jurisdiction for such modification at the final hearing." Nev.Rev.Stat. § 125.170(1) (1964). This jurisdictional limitation, of course, is directly binding only on courts of Nevada, since "a State is permitted to determine the extraterritorial effect of its judgments[,] but it may do so indirectly, by prescribing the effect of its judgments within the State." *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 270, 100 S.Ct. 2647, 2655, 65 L.Ed.2d 757 (1980). (The Court in *Thomas* also observed that "a state legislature seldom focuses on the extraterritorial effect of its enactments * *." *Id.* at 274–75, 100 S.Ct. at 2657–58.) In this case, however, at the time of the parties' divorce Nevada had adopted the Uniform Reciprocal Enforcement of Support Act (URESA). *See* Nev.Rev.Stat. §§ 130.010 to 130.370 (1983) (adopted in 1955). URESA, which has been adopted in some form by all 50 states, provides that the duties of support and maintenance in URESA actions will be determined under the laws of the state where the obligor was present for the

period during which support is sought. *See Colorado ex rel. McDonnell v. McCutcheon*, 337 N.W.2d 645 (Minn.1983); *Elkind v. Byck*, 68 Cal.2d 453, 439 P.2d 316, 67 Cal.Rptr. 404 (1968). Here, although petitioner-appellant did not file his motion for alimony relief under URESA, the fact remains that Nevada law at the time the decree was issued acknowledged the right of other states to apply their own laws to future alimony payments, should the obligor change his residence to those states. The jurisdictional limitation regarding modification of maintenance awards can thus be interpreted as a purely internal limitation on Nevada courts with no binding extraterritorial force.

The second reason for not affording full faith and credit here is based on case authority, which we find persuasive, supporting the proposition that, in changed circumstances, a state may modify alimony in the face of a sister state's valid decree to the contrary. "[A]lteration of conditions warranting modification of a decree for alimony or maintenance produces factual issues for adjudication which were non-existent when the decree was made, and which have never been adjudged." *Scholla v. Scholla*, 201 F.2d 211, 213 (D.C.Cir.1953), *citing Ambrose v. Ambrose*, 200 Misc. 595, 102 N.Y.S.2d 837 (1951); *Conwell v. Conwell*, 3 N.J. 266, 69 A.2d 712 (1949); *James v. James*, 59 N.Y.S.2d 460 (N.Y.Fam.Ct.1946). See also *Thompson v. Thompson*, 645 S.W.2d 79 (Mo.App.1982), where a Kansas decree for child support was held not binding because all relevant parties had subsequently become Missouri residents.

4. We rule, therefore, that full faith and credit does not preclude Minnesota from considering petitioner-appellant's ongoing alimony obligation, where a substantial change of circumstances has been alleged, where one of the parties is a Minnesota resident, and where neither party has resided in or had significant contact with Nevada, the rendering state, in the nearly 20 years since the decree was issued. Ordinarily, the next issue here would be whether Minnesota should apply its own law or California's on alimony relief; the issue, however, is moot, indeed not even raised, since it appears both states permit prospective modification of alimony payments upon a showing of changed circumstances. Minn.Stat. § 518.64 (1982); Cal.Civ.Code § 4806 (West 1983). *See, e.g., In re Marriage of Kuppinger*, 48 Cal. App.3d 628, 120 Cal.Rptr. 654 (1975); *Peterson v. Peterson*, 30 Cal.App.3d 477, 106 Cal.Rptr. 482 (1973). In any event, acting under Minnesota law, the trial court found the requisite change of circumstances to suspend future alimony, and this finding is not challenged here.

5. As to the prospective alimony installments under the Nevada decree, we reverse that part of the trial court's order of February 9, 1983, reinstating future alimony installments. We remand to the district court to enter an order which requires petitioner-appellant John Rudolf to pay the alimony arrearages accrued to the date his motion for alimony relief was heard and which further orders that the Nevada divorce decree be amended to provide that alimony installments due thereafter are suspended as provided in the court's order of December 30, 1981.

Neither party is awarded costs on this appeal.

Reversed in part and remanded with directions.