**Frank Joseph LEWIS,
Plaintiff/Appellant,**

v.

**Linda Rae ROSKIN, formerly known as Linda Rae Lewis, Defendant/Respondent,**

**and**

**State of Missouri, Division of Child Support Enforcement,
Defendant.**

**STATE of Missouri, ex rel., Linda Rae ROSKIN, formerly known as Linda Rae Lewis, Plaintiff/Respondent,**

v.

**Frank Joseph LEWIS,
Defendant/Appellant.**

No. 65184.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 20, 1995.

Application to Transfer Denied
April 25, 1995.

Phillip K. Gebhardt, St. Louis, for appellant.

Jeffrey P. Gault, Wood & Gault, Clayton, Preston E. Roskin, Roskin & Leeds, Clayton, for respondent.

CRANE, Presiding Judge.

Father, Frank Joseph Lewis, appeals from an order of the Circuit Court of St. Louis County modifying a Texas child support decree by extending child support until his son reached age twenty-two or ·completed his college education. The Texas decree had provided that father's child support payments

would terminate when his son reached age eighteen. Father challenges the trial court's action under the full faith and credit clause of the United States Constitution. He also raises challenges to the computation and amount of the award, the absence of parties, and the registration of the Texas decree. We affirm.

Father and mother, Linda Rae Roskin, were married in Missouri on June 12, 1970 and were thereafter divorced in Harris County, Texas, on September 30, 1976. Two children, a daughter and a son, were born of the marriage. The decree ordered father to pay child support in the amount of $350 per month until his youngest child, the son, turned eighteen. Son was to turn eighteen on June 6, 1991.

Father was employed by a business which provided contract management services to hospitals. He testified this employment required him to move frequently. After the parties were separated in June, 1976, father moved to Kansas (June, 1976—October, 1978), Missouri (October, 1978—August, 1981), Kansas (August, 1981—July, 1989), Texas (July, 1989—February, 1991), Florida (February, 1991—September, 1992), and New Jersey (October, 1992—date of hearing). In 1978 mother and son moved to Missouri, where they remained through this proceeding.

## RELEVANT PROCEDURAL HISTORY

*Cause No. 572989*

On February 18, 1988 the Missouri Division of Child Support Enforcement (DCSE) filed an Administrative Order in the Circuit Court of St. Louis County pursuant to § 454.476 RSMo 1986 of the Uniform Reciprocal Enforcement of Support Act [URESA] ordering father to pay $350 per month for son's current support until he reached age twenty-one or became legally emancipated. The order also directed father to pay his child support arrearages. On May 26, 1988 DCSE filed an Amended Administrative Order which terminated support payments when son was legally emancipated. These orders were filed in Cause No. 572989, State

of Missouri ex rel. Linda Rae Lewis v. Frank Joseph Lewis.

On February 17, 1989 father filed a motion to modify the amended order pursuant to §§ 452.370 RSMo (Cum.Supp.1989) and 454.500 RSMo (Cum.Supp.1989). He sought a reduction of the $350 monthly support and credit for support provided to parties' daughter who no longer resided with mother.

On August 8, 1989 father filed his First Amended Motion to Modify and For Other Relief to which he attached and incorporated an authenticated copy of the Texas decree. Count I requested the Texas decree to be registered and recognized in St. Louis County, Missouri under § 511.760 RSMo 1986, the Uniform Enforcement of Foreign Judgments Law [UEFJL]. Count II prayed for modification of child support relating to the parties' daughter under § 452.370. Count III requested reimbursement of sums father expended for daughter's support.

*Cause No. 604946*

On December 27, 1989 father filed a petition as plaintiff in a separate action in St. Louis County, Cause No. 604946, in which he named mother and the State of Missouri as defendants. In Count I father prayed for registration and recognition of the Texas decree in St. Louis County pursuant to the UEFJL. He alleged that an authenticated copy of the Texas decree had been filed in Cause No. 572989 and he incorporated it in the present action by reference. He also filed a copy of the decree. Count II requested a declaratory judgment finding that the Administrative Order was a "decree" which could be modified under § 452.370. Count III requested a declaratory judgment finding that DCSE's Administrative Order violated father's due process rights. Count IV prayed for recovery of money father expended for daughter's support. Count V requested a declaratory judgment to credit the recognized arrearage with the amount father paid to mother for daughter's support.

On February 5, 1990 mother filed an answer to this petition in which she admitted the allegations of Count I and prayed for registration of the Texas decree. She denied the allegations of the remaining counts and asked that they be dismissed. Subsequently,

the trial court dismissed Counts II–V with leave to amend.

Also on February 5, 1990 mother filed her Cross–Motion to Modify the Texas decree under Rule 88 alleging a substantial and continuing change of circumstances. In her motion mother reincorporated and adopted by reference the authenticated copy of the Texas decree attached to father's First Amended Motion to Modify. She requested both an increase in support and an extension of the term of support beyond the age of eighteen so son could pursue higher education.

*Consolidated Proceedings*

On February 9, 1990 the trial court consolidated the two actions. On March 28, 1990 father filed his First Amended Petition. He requested the same relief as in his original petition in Cause No. 604946, but added DCSE as a defendant. In her original and amended answers, mother again admitted the allegations of Count I and requested registration of the Texas decree. She denied the remaining allegations. DCSE moved to dismiss for failure to exhaust administrative remedies.

On December 20, 1990 mother filed her Cross–Motion to Modify and/or Petition under the *Uniform Child Custody Jurisdiction Act* [UCCJA], § 452.440–452.550 RSMo 1986. She requested the St. Louis County court issue an order establishing custody and child support on son's behalf.

On April 5, 1991 the trial court granted DCSE's motion to dismiss. On May 10, 1991 on father's Motion for Reconsideration and/or Clarification the trial court ordered father's First Amended Petition in Cause No. 604946 and First Amended Motion to Modify in Cause No. 572989 dismissed with prejudice and made its order final for purposes of appeal. We affirmed the dismissals in *Lewis v. Roskin*, 823 S.W.2d 152 (Mo.App.1992).

Father next filed a Motion for Summary Judgment on mother's Cross–Motion and/or Petition Under the UCCJA (filed December 20, 1990). The trial court granted father's Motion for Summary Judgment and set mother's pending Cross–Motion to Modify (filed February 5, 1990) for hearing on No-

vember 3, 1993. Both parties testified at the hearing and submitted Form 14's to the trial court. At the time of the hearing, father was living in New Jersey.

The trial court granted mother's Cross–Motion to Modify. It found that Missouri law applied and that application of the authorized support guidelines would be unjust or inappropriate. It awarded child support in the amount of $750 per month retroactive to February, 1990 to continue until son reached the age of twenty-two or completed his higher education, whichever first occurred. Father appeals from this order.

## DISCUSSION

### I.

For his first point on appeal father contends that the trial court erred in applying Missouri law to extend his obligation to pay for son's support beyond age eighteen because Texas law terminates a parent's support obligation at age eighteen. He asserts that the full faith and credit clause of the United States Constitution prohibits Missouri from extending his support obligation past the age of eighteen.

Article IV, § 1 of the Constitution requires that

> Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

Pursuant to this section Congress enacted a statute providing that judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (1994).

■ In the context of child support orders, a court of one state may not modify a sister state's child support decree unless the rendering state also had the power to modify. *Thompson v. Thompson*, 645 S.W.2d 79, 84

(Mo.App.1982).[1] Future installments under a sister state's decree may be modified as long as such installments are subject to modification by the courts in the state rendering the decree. *Id.; Reardon v. Reardon,* 689 S.W.2d 127, 129 (Mo.App.1985) (both opinions *citing People of New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947)). "[I]t is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." *Halvey,* 330 U.S. at 615, 67 S.Ct. at 906, 91 L.Ed. at 1136.

■ Under Texas law the amount of a child support award may be modified where circumstances have materially and substantially changed. Tex.Fam.Code Ann. § 14.08 (West Supp.1995); *Giangrasso v. Crosley,* 840 S.W.2d 765, 769 (Tex.App.1992). However, Texas law does not provide for child support to extend beyond eighteen years of age unless the child is enrolled in a secondary school in a program leading to a high school diploma or the child is disabled. Tex. Fam.Code Ann. §§ 14.05, 14.051 (West Supp. 1995). Accordingly, child support may not be modified to extend payments past age eighteen except where the child is enrolled in a secondary school program leading to a high school diploma or is disabled. *Klaver v. Klaver,* 764 S.W.2d 401, 402–03 (Tex.App. 1989).

■ Father relies on *Yarborough v. Yarborough,* 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269 (1933) to support his argument that the full faith and credit clause bars modification of the Texas decree. In *Yarborough,* the United States Supreme Court held that the full faith and credit clause barred South Carolina courts from modifying a final Georgia child support decree and ordering a father to make additional monthly support payments. The father had complied with the Georgia decree which ordered him to make a lump sum child support payment to fund a trust for the child's benefit. The child had moved to South Carolina, but the father remained in Georgia. The Court held that the father had a right to rely on the fact that he had fulfilled his obligation under Georgia law and the Georgia decree. 290 U.S. at 212, 54 S.Ct. at 185, 78 L.Ed. at 276. However, the Court left open the question of the father's obligation had he also moved to South Carolina. 290 U.S. at 213, 54 S.Ct. at 185, 78 L.Ed. at 276.

In *Thompson,* our Western District addressed the question left unresolved in *Yarborough.* It affirmed a Missouri trial court's modification of a Kansas decree, entered under Kansas law which terminated child support at age eighteen, to extend a father's child support obligation to age twenty-one where the children, the mother, and the father had left Kansas and moved to Missouri. 645 S.W.2d at 88. The mother's motion to modify was filed after the children turned eighteen and the Kansas judgment, like the judgment in *Yarborough,* was final and had been fully performed. The court cited with approval the Restatement (Second) of Conflict of Laws § 103 (1971) as follows:

> A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State.

*Thompson,* 645 S.W.2d at 87. The court then construed the full faith and credit clause by weighing the competing policies between the constitution's interest in protecting the sovereignty of Kansas and Missouri's interest in protecting the child support interests of its domiciled minors. *Id.* at 86. The court noted that in the case before it, unlike *Yarborough,* the father was no longer a resident of the rendering state of Kansas. *Id.* at 87. The court held that where Missouri was responsible for the children's welfare and was

---

1. Mother's Cross–Motion to Modify was filed in father's independent action, Cause No. 604946, and not in the URESA action. There is no authority for a parent to register and modify a foreign support decree in a Missouri URESA action. *State ex rel. Osborne v. Goeke,* 806 S.W.2d 670, 673 (Mo. banc 1991). In a Missouri URESA action, the court may order payment of a different amount, but this order does not supersede the original order. *Id.* at 672; § 454.280 RSMo 1994.

the only state with any legitimate continuing interest in the matter, the full faith and credit clause would not bar modification of the decree to extend child support to age twenty-one. *Id.* at 88.

In *Davis v. Sullivan,* 762 S.W.2d 495 (Mo. App.1988), the Western District followed *Yarborough* where, after a Kansas divorce, the father remained in Kansas, but the mother and the child moved to Missouri. The Kansas decree terminated child support at age eighteen. The mother filed a motion to modify four days before the child turned eighteen. The court treated the Kansas judgment as final and unmodifiable because the child had turned eighteen. The court followed *Yarborough* and affirmed the trial court's dismissal of mother's motion under the full faith and credit clause because the father continued to reside in Kansas and because the father had fulfilled his duties under the Kansas decree. *Id.* at 497–98. The court acknowledged that it had recognized an exception to *Yarborough* in *Thompson* where all the parties had moved from the decree-rendering state, but held that, because the father remained in Kansas, the *Thompson* exception did not apply. *Id.*

*Thompson* has been cited and followed by the appellate courts of at least four other states. In *Rudolf v. Rudolf,* 348 N.W.2d 740 (Minn.1984), the parties, who were then domiciled in New Jersey, obtained a divorce in Nevada in 1965. Subsequent to the divorce the wife moved to Minnesota, where she stayed, and the husband moved to Minnesota and several other states, finally settling in California. In 1981 the husband filed a motion in a Minnesota court to terminate his alimony obligation under the Nevada decree. The trial court denied the motion on the grounds that the Nevada decree was a final unmodifiable judgment. The Minnesota Supreme Court reversed. It held that the full faith and credit clause did not preclude Minnesota from modifying future installments of the Nevada alimony award for two reasons. First, it held that Nevada's jurisdictional limitation regarding modification of maintenance awards was binding only on Nevada courts and had no extraterritorial effect. *Id.* at 742. Second, it found cases from other states (including *Thompson* ) were per-

suasive authority for the proposition that, in changed circumstances, a state may modify alimony or child support in the face of a sister state's valid decree to the contrary. *Id.* at 743. As applied to the case before it, the court held that full faith and credit did not preclude Minnesota from considering the husband's ongoing alimony obligation because 1) a substantial change of circumstances had been alleged, 2) one of the parties was a Minnesota resident, and 3) neither party had resided in or had a significant contact with the rendering state of Nevada in twenty years. *Id.*

In *Finney v. Eagly,* 568 So.2d 816 (Ala. App.1990), after the parents' divorce decree was entered in Utah, the father moved to Montana and the mother and the children moved to Alabama. The father filed an action in Alabama for joint custody and specific visitation; the mother cross-petitioned for modification of the decree to provide increased child support. The trial court increased child support but found that the father was only obligated to support the children until they reached age eighteen, the age of majority in Utah. The mother appealed, contending she was entitled to continued child support until the children reached nineteen, Alabama's age of majority. Applying *Thompson,* the Alabama court held that Alabama was the state with the legitimate interest in the matter because, at the time the parties sought modification: 1) none of the parties lived in the rendering state of Utah; 2) the forum state was responsible for the children's welfare; and 3) the father had availed himself of Alabama's jurisdiction by bringing the action in Alabama. 568 So.2d at 819. It held that the trial court should have ordered child support to continue until the age of majority under Alabama law. *Id.*

In *In re Marriage of McCabe,* 819 P.2d 1116 (Colo.App.1991), the Colorado court of appeals applied *Thompson, Finney, Rudolf* and other decisions and held that the general rule, if a decree is not modifiable in the rendering state, the full faith and credit clause precludes it from being modified in Colorado, "is not necessarily true if, at the time the request for change is made, the parties, particularly the obligor, are no long-

er residing in the rendering state." 819 P.2d at 1118. At issue was a California child support decree. The court treated the decree as not modifiable in California as to payments beyond age eighteen. The court held that Colorado courts could modify a California decree to extend a father's child support payments to age twenty-one without violating the full faith and credit clause if neither the father nor the child remained in California. *Id.* at 1120.

In *Elkins v. James*, 40 Ark.App. 44, 842 S.W.2d 58 (1992), the parties were divorced in Missouri in 1979. The father was ordered to pay monthly child support. In 1980 the wife and the minor children moved to Arkansas. In 1982 the father moved to Oklahoma. In 1991 the father petitioned an Arkansas court to terminate his duty of child support for his oldest son who had turned eighteen. The mother argued that under Missouri law the son, who was attending college, was entitled to support until age twenty-one. The Arkansas chancellor terminated support. On appeal the mother contended that, as a matter of full faith and credit, the chancellor should have applied Missouri law concerning termination of child support. The Arkansas court reviewed *Thompson, McCabe, Finney,* and *Elkind v. Byck,* 68 Cal.2d 453, 67 Cal. Rptr. 404, 439 P.2d 316 (1968) and held "the case law illustrates that the full faith and credit clause erects no barrier to the application of Arkansas law on this subject, particularly where the obligor has not remained a resident of the rendering state." *Elkins,* 842 S.W.2d at 61–62. It further held that Arkansas had acquired an interest in the welfare of the minor children by virtue of their lengthy residence in Arkansas so that "the issue of their support has become an internal affair of this state." *Id.* at 62.

In the present case none of the parties were Texas residents at the time of the hearing or at the time son turned eighteen. Mother and son had been Missouri residents since 1978. Father left Texas in 1976 and, in the seventeen years prior to the hearing, only returned to Texas to live for a two-year period. Although father was living in Texas at the time mother's Cross–Motion to Modify was filed, we believe that this circumstance is not controlling because father had not been a Texas resident for fifteen of the seventeen years following the divorce and he no longer resided in Texas at the time son turned eighteen or when the matter was heard.

Although jurisdiction is not challenged, we note that father submitted to Missouri jurisdiction when he filed his petition in Cause No. 604946, in which action mother filed her Cross–Motion to Modify which is the subject of this appeal.[2]

Accordingly, we find that Missouri's interest in the welfare of its resident child outweighs Texas' interest in protecting its sovereignty. The full faith and credit clause does not prohibit the trial court's application of the Missouri law concerning the age of termination of child support. The trial court did not err in extending child support to age twenty-two or until completion of college. Point one is denied.

## II.

For his second point father challenges the trial court's use of Missouri law, specifically Rule 88 and Form 14, to determine the amount of child support. He argues the court should have applied Texas law. In his response to mother's Cross–Motion to Modify, father pleaded that Rule 88 and Form 14 did not apply to the Texas decree under the full faith and credit clause. This pleading gave notice that father was relying on Texas law as required by Rule 55.21. *See Valleroy v. Southern Ry. Co.,* 403 S.W.2d 553, 555 (Mo.1966). However, at the hearing the trial court invited father to submit a proposed Form 14. Father's attorney agreed and filed a Form 14 on father's behalf without objection. Counsel did not argue that the computation should not be made under Form 14 or argue that Texas law should govern the computation. He did not supply the court with any authority or method for calculating support under Texas law. The only argument father made to the trial court was that Texas law governed the age of termination of child support. Under these

---

2. Had father participated solely in the URESA proceedings, the court would not have otherwise had jurisdiction over him. § 454.105 RSMo 1994.

circumstances father abandoned his claim that Texas law should be used to compute child support and he acquiesced in a computation under Missouri's Rule 88 and Form 14. A party will not be heard to complain on appeal of an alleged error in which, by his own conduct at the trial, he joined or acquiesced. *In re Marriage of Medlock*, 749 S.W.2d 437, 440 (Mo.App.1988). Point two is denied.

### III.

For his third point father contends the trial court did not have jurisdiction to enter its judgment because son's stepfather and son were indispensable parties. Father did not raise this issue in his pleadings or at the hearing. However, failure to join an indispensable party is a jurisdictional issue which this court must consider on its own motion. *Vanderson v. Vanderson*, 668 S.W.2d 167, 169 (Mo.App.1984).

Father contends that stepfather is an indispensable party under Rule 52.04 because, while this case was pending, stepfather paid for son's college expenses and may have reimbursement rights against father under § 453.400 RSMo 1986 or Missouri common law. Neither this statute nor the common law create a reimbursement right under the circumstances in this case. Stepfather has no statutory right to reimbursement for son's college expenses under §§ 453.400.2 or 453.400.3. Stepfather paid these expenses before father was ordered to pay them. Subsection 2 makes a parent liable to a stepparent only if the parent has failed to pay court-ordered support.

Subsection 3 acknowledges and preserves a stepparent's common law rights to recover for necessities provided in the absence of court-ordered support. Third party rights to recover support from a natural parent rest upon an actual agreement or one implied by law for the fulfillment of the natural parent's duty to his child. *Schwieter v. Heathman's Estate*, 264 S.W.2d 932, 934 (Mo.App.1954). If the third party does not rely on reimbursement from the natural parent, but has assumed the support voluntarily, the law does not imply an agreement, and no liability attaches to the natural parent.

*Schwieter*, 264 S.W.2d at 934. Father has not asserted that he agreed to reimburse stepfather or that stepfather has demanded reimbursement. The record accordingly supports only a conclusion that stepfather paid for son's college expenses voluntarily. Under these circumstances stepfather was not an indispensable party.

Father next argues that son was an indispensable party because son has a right under § 452.340.5 RSMo 1986 to petition the court to order the obligated parent to make support payments directly to the child. Section 452.340.5 provides:

> If the child is enrolled in [an institute of vocational or higher education], the child or the obligated parent may petition the court to amend the order to direct the obligated parent to make the payments directly to the child.

Father contends that a judgment requiring him to pay retroactive child support to mother is inconsistent with his potential obligation to pay son directly. Father misinterprets this statute. Section 452.340.5 does not subject father to double or inconsistent obligations; rather, it allows the court to redirect support payments made to satisfy a single obligation. Further, the record does not indicate that son was seeking direct payment.

Father has not shown a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [son's or stepfather's] claimed interest." Rule 52.04(a)(2)(ii). He has not shown that son or stepfather has an interest which arises "above a mere consequential possibility." *See Vanderson*, 668 S.W.2d at 170. The trial court did not err in failing to join stepfather or son. Point three is denied.

### IV.

For his fourth point father asserts that the trial court erred in failing to issue findings of fact and conclusions of law. He argues that he requested findings pursuant to Rule 73.01 and that Rule 88.01 and Form 14 also require findings.

Rule 73.01(a)(2)[3] provided that the court, "may, or if requested by counsel, shall, include its findings on such controverted fact issues as have been specified by counsel." Father concedes that he made only a general request for findings of fact and conclusions of law and did not specify the controverted fact issues on which he sought findings. A court is not required to issue findings where controverted fact issues have not been specified. *Buder v. Buder,* 824 S.W.2d 483, 485 (Mo. App.1992).

Father also argues that Rule 88.01 and Form 14 require the court to make findings before it can adjust the presumed support amount of Form 14 to include post-secondary educational expenses. Father further argues that when the trial court does not use Form 14 it must enter into the record the actual numbers used to calculate the non-Form 14 child support.

Rule 88.01(e) provides:

It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

Rule 88.01 requires that when a trial court deviates from the amount determined by Form 14, it must make a finding that the Form 14 amount, after consideration of all relevant factors, is unjust or inappropriate. *In re Marriage of Cohen,* 884 S.W.2d 35, 39 (Mo.App.1994); *Scoggins v. Timmerman,* 886 S.W.2d 135, 138 (Mo.App.1994). The trial court complied with Rule 88.01(e) by checking the box on the court's preprinted modification judgment form which indicated its finding that "application of authorized support guidelines would be unjust or inap-

propriate."[4] The trial court is not required to make additional findings in relation to its calculation of child support when it deviates from Form 14. *Cohen,* 884 S.W.2d at 39; *Scoggins,* 886 S.W.2d at 139 (overruling prior Western District cases to the contrary). Point four is denied.

### V.

For his fifth point father asserts that the trial court erred in modifying the Texas divorce decree because the Texas decree had never been properly registered in Missouri under the UEFJL. Father asserts that there was no judgment or order registering the Texas decree, the trial court dismissed the amended petition in which he had requested the decree be registered, and mother did not register the decree. This argument has no merit.

In the first place, Rule 74.14, which codifies the UEFJL (1964 Act) in Missouri, does not require the filing of a petition for registration or the entry of an order of registration. Rather, registration occurs when an authenticated copy of the foreign judgment is filed in the circuit clerk's office. Rule 74.14(b). An authenticated copy of the Texas decree was filed in the circuit clerk's office when father's amended motion was filed. Since pleadings were unnecessary to register the judgment, the subsequent dismissal of father's amended motion and amended petition for reasons unrelated to registration did not "undo" that registration.[5] Father asserts that there was no registration under this rule for the additional reason that the clerk did not mail notice of the filing to the judgment debtor as required by Rule 74.14(c). However, in this case the judgment *debtor* (father) was the person who registered the decree. Thus, the notice provisions were inapplicable.

---

3. Now Rule 73.01(a)(3).

4. Although we find this action satisfies Rule 88.01(e), it would be preferable for the preprinted form to contain the precise language of Rule 88.01(e). *See In re Marriage of Short,* 847 S.W.2d 158, 165 (Mo.App.1993).

5. We note that mother joined in father's prayer for registration of the Texas decree. Before father's amended petition praying for registration was dismissed, mother filed answers to both the original and amended petition in which she admitted that an authenticated copy of the Texas decree was filed in St. Louis County and also prayed for it to be registered.

Next, father does not provide any legal authority in his brief to support his underlying premise, that registration of a foreign decree under the UEFJL is a prerequisite to modification, and we have found none. The UEFJL is not exclusive. Rule 74.14(e). Further, registration under the UEFJL is not a jurisdictional prerequisite to modification of a foreign child support decree.

Finally, neither mother nor father challenged the existence, contents, or validity of the Texas decree in the trial court. In the first paragraph of mother's Cross–Motion to Modify, mother "reincorporate[d] by reference and adoption" the Texas decree which father had previously filed in the case and alleged it had been authenticated in the manner authorized by Missouri courts. Father admitted the allegations of this paragraph. These pleadings were conclusive on the existence and contents of the Texas decree. Neither party claimed the decree was invalid. Point five is denied.

## VI.

In his sixth point father contends that the trial court's award of $750 per month in child support was not supported by substantial evidence in the record. Alternatively, he argues the award resulted from an erroneous declaration or application of the law. We have reviewed the evidence of son's educational expenses and father's and mother's incomes and work histories. The award is supported by substantial evidence. The trial court did not misdeclare or misapply the law. *Leahy v. Leahy*, 858 S.W.2d 221, 225 (Mo. banc 1993). An extended opinion on this point would have no precedential value. Point six is denied.

Judgment affirmed.

CRANDALL, and DOWD, JJ., concur.