**Diane Rose DANDURAND, Respondent,**

v.

**Kevin Eugene UNDERWOOD, Appellant.**

**No. WD 72202.**

Missouri Court of Appeals, Western District.

Feb. 22, 2011.

Larry V. Swall, Liberty, MO, for appellant.

J. Kirk Rahm, Warrensburg, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge, and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

Kevin Eugene Underwood ("Father") appeals from the trial court's judgment denying his motion to terminate child support. We affirm.

## Statement of Facts and Procedural History

On September 23, 1991, the District Court of Johnson County, Kansas, entered a divorce decree ("Decree") terminating the marriage of Father and Diane Rose Dandurand ("Mother"). Pursuant to the Decree, Father was ordered to pay child support for his two minor children, Jacob Russell Underwood ("Jacob"), born March 16, 1988, and Jesse Lee Underwood ("Jesse"), born August 28, 1990, in the amount of $466.00 per month. The Decree provided that the obligation to pay child support would continue "until further order of the Court."

On May 19, 1992, the District Court of Johnson County, Kansas, modified the Decree because Father had moved from Texas to Johnson County, Kansas, and because Mother had moved with the minor children from Johnson County, Kansas, to Warrensburg, Missouri. The trial court terminated Father's maintenance obligations and adjusted the parties' visitation schedule but did not modify Father's child support obligations.

In June 1996, Mother filed a motion to modify the Decree in Johnson County, Missouri. At the time, Mother and the minor children lived in Johnson County, Missouri, and Father lived in Johnson County, Kansas. Father made a special and limited appearance to contest jurisdiction and filed a motion to dismiss based on the lack of jurisdiction. The Honorable Owens Lee Hull, Jr. was assigned to sit specially in the case. On October 11, 1996, Judge Hull heard arguments on Father's motion to dismiss and denied the motion. Mother's motion to modify was set for trial.

On October 16, 1996, Mother registered the Decree and the May 19, 1992 modification of the Decree in the State of Missouri.

On April 29, 1997, Judge Hull entered an order modifying the Decree following a trial. Father's child support obligation was increased to $587.00 per month. Judge Hull's modification order provided that in all other respects, the Decree and the May 19, 1992 modification of the Decree would remain in full force and effect. Father did not appeal the modification order and, thus, did not appeal the trial court's denial of his motion to dismiss for lack of jurisdiction.

On February 20, 2004, Mother again filed a motion to modify the Decree in Johnson County, Missouri, seeking an increase in child support. At the time, Mother and the minor children were still living in Johnson County, Missouri, and Father was still living in Johnson County, Kansas. At the time Mother's motion to modify was filed, Jacob was nearly sixteen, and Jesse was fourteen. Father filed a response to Mother's motion to modify. Though Father contested the merits of the motion, Father did not contest the trial court's personal or subject matter jurisdiction to hear the motion. Father did not ask the trial court to order that some, or all, of his child support obligation would cease when his children turned eighteen.

On August 31, 2005, Judge Hull entered a judgment granting Mother's motion to modify the Decree. Judge Hull found that changed circumstances warranted an increase in Father's monthly child support

obligation. Judge Hull calculated Father's revised child support obligation pursuant to section 452.340, Rule 88.01, and Missouri's Form 14, all as then in effect. Father's child support obligation was increased to $741.00 per month, retroactive to April 1, 2004. Judge Hull's judgment advised that the revised amount of child support was to be paid by Father on the first day of each month "until further order of this Court." Father did not appeal the trial court's August 31, 2005 judgment.

On October 8, 2009, Father filed a motion to terminate child support in the Circuit Court of Johnson County, Missouri. At the time, Father resided in Johnson County, Kansas, and Mother and the minor children lived in Johnson County, Missouri. Jacob had turned twenty-one in March 2009, and Jesse had turned eighteen in August 2009. Father sought an order declaring his children to be emancipated under Kansas law, specifically, KSA Section 60–1610(a)(1)(B), which provides that support for a child shall continue until the month following the date a child reaches the age of eighteen or graduates high school, whichever comes later. Father relied for support on *Kerr v. Kerr*, 100 S.W.3d 912 (Mo.App. W.D.2003.) Father claimed that all child support he had paid after June 2009 [1] should be reimbursed to him.

In response to Father's motion, Mother did not dispute that Jacob, having attained the age of twenty-one, was emancipated. Mother admitted that Kansas law treats minor children as emancipated at age eighteen. However, Mother argued that Missouri law regarding emancipation controlled. Mother contended that under Missouri law, Jesse was not yet emancipated because he was under the age of twenty and enrolled in qualifying post-secondary schooling.

On April 30, 2010, the trial court entered a judgment ("Judgment") denying Father's request to terminate child support.[2]

Father appeals.

## Introduction

In Father's sole point on appeal, he contends that the trial court erred in denying his motion to terminate child support because section 454.973(c) [3] prohibited the trial court from modifying child support beyond the durational limits set by Kansas law, and because the trial court's judgment denied Father the full faith and credit of the Decree. We disagree.

## Standard of Review

■ "We review a trial court's decision as to a motion to emancipate and terminate child support pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Kerr*, 100 S.W.3d at 914 (citing *Peace v. Peace*, 31 S.W.3d 467, 470 (Mo.App. W.D.2000)). "We will not reverse its decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously

1. It is not clear why Father would have taken this position, as Jesse did not turn eighteen until August 28, 2009, suggesting that September 2009 would have been the month following the later of the dates that Jesse reached the age of eighteen or graduated high school.

2. The trial court had entered an order to this effect on January 22, 2010, from which Father filed an appeal. Because the order was not denominated a "judgment," this court advised Father his appeal would be dismissed unless a final judgment was secured. Thereafter, the Judgment was entered by Judge Hull, and filed by Father with this court. Father's premature appeal was deemed thereafter timely filed pursuant to Rule 81.05(b).

3. All statutory references are to RSMo (2000) as supplemented unless otherwise noted.

declares and applies the law." *Id.* "In our review, we are to afford the trial court deference concerning its determinations of credibility and are to view the evidence in the light most favorable to the trial court's decision." *Id.* "The trial court's judgment must be affirmed under any reasonable theory that is supported by the evidence." *Id.*

### Section 454.973(c)

■ Section 454.973(c) provides in pertinent part that "[a] tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state." Section 454.973 is a part of the Uniform Interstate Family Support Act ("UIFSA"), sections 454.850–454.999, which was enacted in Missouri on January 1, 1997. "Under UIFSA, child support is subject to a one-order system, whereby only one state's child support order governs at any given time." *Lunceford v. Lunceford,* 204 S.W.3d 699, 702 (Mo.App. W.D.2006).

In this case, the Decree was entered by the District Court of Johnson County, Kansas, in 1991, and was registered as a judgment in Missouri in 1996, *before* Missouri adopted UIFSA. Prior to the adoption of UIFSA, the enforcement of child support obligations was controlled by the Uniform Reciprocal Enforcement of Support Law ("URESA"), sections 454.010 to 454.360. Section 454.360 provides that:

> In all cases filed by Missouri or received by Missouri under the provisions of the

uniform reciprocal enforcement of support act, sections 454.010 to 454.360, prior to January 1, 1997, the provisions of the uniform reciprocal enforcement of support act, sections 454.010 to 454.360, shall continue to apply. In all other cases, the provisions of the uniform interstate family support act, sections 454.850 to 454.980, shall apply.

Thus, we have held that "[p]ursuant to section 454.360, UIFSA applies to all child support cases *filed or received in this state on or after January 1, 1997*." [4] *Kerr,* 100 S.W.3d at 914 (emphasis added); *see also Burke v. Hutto,* 243 S.W.3d 431, 433 n.2 (Mo.App.E.D.2007) ("[A]ll cases filed or received in Missouri *after* January 1, 1997 will be governed by the provisions of UIFSA, and sections 454.850 to 454.980 shall apply." (emphasis added)). Based on the express provisions of section 454.360, the Decree was filed or received in Missouri *before* January 1, 1997, and is thus is not subject to UIFSA.

Notwithstanding the express provisions of section 454.360, Father argues that the trial court's August 31, 2005 judgment modifying the Decree subjected the Decree to UIFSA, even though the Decree was "filed or received" in Missouri before UIFSA was adopted. Father thus argues that section 454.973(c) applied to prohibit the trial court from ordering him to continue paying child support because Jesse had reached the age of eighteen—the age of emancipation under Kansas law. [5]

---

4. The phrase "filed or received" is not defined. However, in our discussion, *infra,* we conclude "filed or received" refers to the first point in time when a foreign decree is either registered or sought to be modified in this state.

5. Though Father characterizes the trial court's Judgment as ordering him to pay child support for Jesse until he turns twenty-one, the trial court did not so order. The trial

court's Judgment merely denied Father's motion to terminate child support. As such, the trial court's earlier judgment entered August 31, 2005, which ordered Father to pay $741.00 per month in child support "until further order of the court" remains controlling with respect to the duration of Father's obligation. Though the practical effect may be the same, we are compelled to ensure that the trial court's Judgment is accurately characterized.

Section 454.360 does not provide for the "hybrid" treatment of a foreign decree Father's argument presupposes. In fact, Father's argument would require us to rewrite section 454.360 to provide that a foreign decree that is "filed or received" in Missouri *before* UIFSA's adoption, and thus which is subject to URESA, will become subject to UIFSA if "modified" *after* the adoption of UIFSA. We are not empowered to rewrite section 454.360 in this manner given its clear and plain meaning. *State v. Rowe*, 63 S.W.3d 647, 650 (Mo. banc 2002) (stating that court, under the guise of interpreting a statute, cannot rewrite the statute, but must apply its plain, clear and unambiguous terms).

Undaunted, Father claims that *Kerr* and *Lunceford* support his construction of UIFSA. Father's reliance on *Kerr* and *Lunceford* is misplaced.

In *Kerr*, a divorce decree was entered in Oklahoma in 1988 and then registered in Missouri in 2001 at a time when mother and the minor child lived in Missouri. 100 S.W.3d at 913. Father filed a motion to terminate his child support obligation because the minor child was emancipated under the terms of the Oklahoma divorce decree. *Id.* The motion was denied by the trial court. *Id.* On appeal, we held that pursuant to section 454.360, the Oklahoma decree was subject to UIFSA, as it had been registered in Missouri *after* UIFSA was adopted. *Id.* at 914. Thus, we held that "the trial court here, just as was the Oklahoma court, was powerless to extend the [father's] child support obligation past [the minor child's] eighteenth birthday," pursuant to the clear and express provisions of section 454.973(c). *Id.* at 914–15. Kerr clearly does not stand for the proposition that a foreign decree registered in Missouri *before* the adoption of UIFSA becomes subject to UIFSA if modified by

a Missouri court *after* the adoption of UIFSA.

In *Lunceford*, the parties' dissolution decree was entered in West Germany in 1989 and then adopted and modified in Kansas in 1991. 204 S.W.3d at 700. After father moved to Missouri, mother (who resided with minor child in New Jersey) pursued a motion to modify the decree in Kansas in 2001. *Id.* at 700–01, the Kansas court determined it did not have jurisdiction over father. Though mother attempted to have the Kansas court transfer the action to New Jersey, Kansas transferred the action to Missouri. *Id.* The Missouri court modified the Kansas decree in 2003 to increase father's child support. *Id.* at 701. The Missouri modification order was registered in Tennessee for enforcement, as father moved to Tennessee while mother's motion to modify was pending. *Id.* In 2004, mother again asked Missouri to modify father's child support obligation. *Id.* At this time, father lived in Tennessee and mother and the minor child still resided in New Jersey. *Id.* In response, father sought to terminate his child support obligation because under Kansas law, the minor child would soon turn eighteen and, thus, be emancipated. *Id.* The Missouri trial court granted mother's modification request and denied father's motion to terminate his child support obligation. *Id.*

The Kansas decree in *Lunceford* was filed or received in Missouri *after* the adoption of UIFSA and was thus subject to UIFSA at all times. Our analysis in *Lunceford* was thus devoted to an interpretation of UIFSA. We did not hold in *Lunceford*, however, that a foreign decree filed or received in Missouri *before* UIFSA later becomes subject to UIFSA if modified *after* the adoption of UIFSA.

UIFSA did not apply to the Decree as modified in Missouri. We conclude, therefore, that Father's claim that the trial

court erroneously denied his motion to terminate child support pursuant to section 454.973(c), a provision in UIFSA, is without merit.

### Full Faith and Credit Clause

■ In the alternative to his claim that UIFSA applied to the Decree, Father maintains that pre-UIFSA common law required the trial court to afford the Decree full faith and credit, such that the trial court's failure to apply Kansas law regarding the permissible duration of child support denied him full faith and credit. We disagree.

■ Article IV, Section 1 of the United States Constitution provides that:

Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

"Pursuant to this section Congress enacted a statute providing that judgments 'shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.'" *Lewis v. Roskin,* 895 S.W.2d 190, 194 (Mo.App. E.D.1995) (quoting 28 U.S.C. section 1738 (1994)). The Full Faith and Credit Clause does not require, however, rigid enforcement of a judgment from an originating state without regard to the interests of the sister state:

A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper

interference with important interests of the sister State.

*Thompson v. Thompson,* 645 S.W.2d 79, 87 (Mo.App. W.D.1982) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 103 (1971)). In fact, "[a] rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, whatever conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own." *Alaska Packers Ass'n v. Indus. Accident Comm'n,* 294 U.S. 532, 547, 55 S.Ct. 518, 79 L.Ed. 1044 (1935).

In support of his argument that the trial court was precluded by the Full Faith and Credit Clause from modifying the Decree[6] to obligate him to pay child support beyond the duration that would have been required under Kansas law, Father relies on *Yarborough v. Yarborough,* 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269 (1933). Once again, Father's reliance is misplaced.

In *Yarborough,* a father was ordered by a Georgia divorce decree to make a lump sum payment into a trust for the welfare and benefit of his child, essentially a payment in the nature of child support. 290 U.S. at 204, 54 S.Ct. 181. A South Carolina court later modified the Georgia decree, and imposed a continuing obligation on the father to remit monthly payments for his child's education and support to the child's grandfather who was serving as her guardian. *Id.* The United States Supreme Court found that the Full Faith and Credit Clause did not permit the South Carolina court to impose a new child support on father when father's original child support obligation had been fulfilled. *Id.* at 212, 54 S.Ct. 181. The fact that father had completely fulfilled his support obligation as originally decreed *before* the obligation

---

**6.** *See supra* note 5.

was "modified" was, therefore, dispositive. "[Father] has fulfilled the duty which he owes [his child] by the law of his domicile and the judgment of its court. Upon that judgment he is entitled to rely." *Id.* The Supreme Court analogized the satisfaction of the Georgia judgment to "an unalterable decree of alimony for a minor child." *Id.* at 213, 54 S.Ct. 181.

In this case, Father's child support obligation was never described in the Decree in a manner which would have permitted Father to claim that he had "fulfilled" his obligation at any time before the obligation was modified in Missouri. In fact, the Decree expressed that the child support obligation therein described would remain payable "until further order of the Court." *Yarborough* is inapposite.

In any event, Missouri cases that have applied *Yarborough* also recognize the balancing test inherent in determining whether full faith and credit requires the application of a foreign state's conflicting laws. In *Thompson,* the court "construed the full faith and credit clause by weighing the competing policies between the constitution's interest in protecting the sovereignty of Kansas and Missouri's interest in protecting the child support interests of its domiciled minors." *Lewis,* 895 S.W.2d at 195 (citing *Thompson,* 645 S.W.2d at 86). The court distinguished *Yarborough* and held that where the mother, father, and the minor child no longer lived in Kansas (the issuing state) and where Missouri was responsible for the welfare of the resident minor child, Missouri was the only state with any legitimate controlling interest. *Thompson,* 645 S.W.2d at 88. Thus, the Full Faith and Credit Clause did not prohibit Missouri from requiring the payment of child support by father until the child reached the age of twenty-one. *Id.*

In *Davis v. Sullivan,* 762 S.W.2d 495 (Mo.App. W.D.1988), we followed *Yarborough.* Under Kansas law, child support terminated when the minor child turned eighteen. *Id.* at 496. The mother and minor child moved to Missouri, but father remained a resident of Kansas. *Id.* Mother filed a motion to modify child support *four days* before the minor child's eighteenth birthday. *Id.* Under these circumstances, we affirmed the trial court's dismissal of mother's motion under the Full Faith and Credit Clause, because father remained a resident of Kansas, *and* because by the time mother's motion could have been entertained, father's obligation under the Kansas decree would have been completely fulfilled. *Id.* at 497–98.

In *Lewis,* father and mother were divorced in Texas in 1976. 895 S.W.2d at 193. The decree ordered father to pay child support for his two children until the youngest child turned eighteen. *Id.* In 1978, mother and the two children moved to Missouri. *Id.* Father's job required him to move frequently, and after the divorce, father lived at various times in Kansas, Missouri, Texas, Florida, and New Jersey. *Id.* In February 1988, father was ordered by the Missouri Division of Child Support Enforcement to pay child support for his oldest child until he reached the age of twenty-one or was otherwise emancipated and to pay the arrearage from the time the son had turned eighteen. *Id.* In 1989, father filed various legal proceedings in Missouri challenging these orders and registered the Texas decree. *Id.* In response, mother filed a cross-motion to modify the Texas decree. *Id.* at 194. Most of father's legal proceedings, and mother's cross-motion, were filed at a time when father was living in Texas. *Id.* at 193–94. The trial court entered its judgment extending father's child support obligations to the point in time when his son reached the age of twenty-two or completed college. *Id.* at 194. After discussing *Yarborough, Thompson,* and *Davis,* our Eastern District held that "Missouri's interest in the welfare of its resident child outweighs

Texas' interest in protecting its sovereignty. The full faith and credit clause does not prohibit the trial court's application of the Missouri law concerning the age of termination of child support." *Id.* at 197.

In *Burke,* father and mother's marriage was dissolved by a California decree. 243 S.W.3d at 433. Mother and the minor child moved to Missouri and father moved to Georgia. *Id.* Mother registered the California decree in Missouri in 1994 (thus, pre-UIFSA). *Id.* Mother then filed a motion to modify child support in Missouri. *Id.* The motion was granted, and father's support obligation was increased. *Id.* Several years later, father filed an affidavit in Missouri seeking to terminate his child support obligation because pursuant to California law, the minor child became emancipated on his nineteenth birthday. *Id.* The trial court ordered father's child support obligation terminated. *Id.*

On appeal, mother argued that Missouri law controlled determination of emancipation, in large part because of Missouri's prior modification of the California decree. *Id.* at 433–34. Father argued the court did not have personal jurisdiction over him when it entered the modification order. *Id.* at 434. The court noted that father had "filed an answer by special appearance in response to mother's motion to modify" challenging "the trial court's personal jurisdiction over him." *Id.* The jurisdictional challenge was never ruled, and the trial court thereafter entered the modification order, from which father did not appeal. *Id.* Father thereafter paid the modified support obligation. *Id.* When father filed his affidavit seeking to terminate child support because of emancipation, he did not raise the issue of the trial court's jurisdiction over him to have modified child support. *Id.* Our Eastern District

concluded that the trial court had personal jurisdiction over father when it modified the California decree, noting that "the defense of lack of personal jurisdiction can be waived by 'submission through conduct.'" *Id.* (quoting *Gletzer v. Harris,* 159 S.W.3d 462, 465 (Mo.App. E.D.2005)).

Father also argued that URESA required the Missouri trial court to apply Georgia law (the state where father had resided for many years), which treated a minor child as emancipated at the age of eighteen. *Id.* at 435. The Eastern District concluded that URESA did not control father's child support obligation because the stated purpose of URESA concerns "enforcement of duties of support." *Id.* Father's request to terminate his child support obligation was not in the nature of a child support enforcement action, rendering URESA of no import.[7] *Id.*

Finally, the court in *Burke* found *Lewis* to be instructive. *Id.* It found "that the interest of Missouri in the welfare of its resident child outweighs the interest of Georgia, where father resides, in protecting its sovereignty." *Id.* at 435–36. It held that the trial court erred in granting father's motion to terminate child support. *Id.* at 436.

These cases collectively suggest that no "bright line" exists to determine whether full faith and credit necessitates our recognition of an issuing state's law with respect to the durational limit of a child support obligation, unless, at the time action is first sought to be taken on a foreign decree in this state, the child support obligation as described in the issuing state's decree has already been fulfilled and has thus become non-modifiable. In all other cases, we are to apply a balancing test to determine whether our interests in protecting the

---

7. We observe that in this case, father has not argued that URESA applied to his motion to terminate child support as to require the application of Kansas law on the issue of the duration of his child support obligation.

welfare of a resident child outweigh the interests of the issuing state in protecting its sovereignty. In applying that balancing test, it is relevant, though not dispositive, whether the party obligated to pay child support remains a resident of the issuing state.[8] It is also relevant the extent to which Missouri, prior to an effort to terminate the child support obligation, has already exercised its jurisdiction over the party obligated to pay child support by virtue of a modification of the issuing state's decree.

In this case, Mother and the minor children have lived in Missouri since at least 1992. Since that time, Missouri courts have on two different occasions entered orders modifying Father's child support obligation. In 1996, Father's request that Mother's motion to modify be dismissed because of lack of jurisdiction was denied, and Father did not appeal the order modifying the Decree, a fact that is strikingly similar to the facts in *Burke*. In 2004, Father submitted to the jurisdiction of the Missouri trial court to contest Mother's motion to modify his child support obligation without objection and did not appeal the related 2005 judgment. When Father filed his motion to terminate child support in Missouri, he did not challenge the trial court's jurisdiction to enter the 2005 judgment increasing his child support obligation, a fact that is again strikingly similar to *Burke*. Father apparently paid the increased child support obligation awarded by the trial court's 2005 judgment, at least until the time he filed his motion to terminate child support, and thus did so with respect to Jacob well past Jacob's eighteenth birthday.[9]

We conclude, given all of these circumstances, and notwithstanding the fact that Father still resides in Kansas, that full faith and credit does not require us to apply Kansas law with respect to the duration of father's child support obligation. Under the facts and circumstances of this case, the interests of Missouri in protecting the welfare of longstanding resident minor children outweigh the interest of Kansas in protecting its sovereignty. The trial court did not commit error, therefore, in denying Father's motion to terminate child support.

### Conclusion

The judgment of the trial court is affirmed.

All concur.

---

8. Father's contention that the pre-UIFSA common law established a "bright line" which requires, with respect to determining the required duration of child support obligation, systematic deference to the issuing state is not supported by the law, as noted in our discussion, above. In any event, Father concedes he has not continuously lived in Kansas from the time of the Decree to the time of the Judgment and that he lived in Texas for a period prior to, and for a short time after, the entry of the Decree. Father offered no evidence to the trial court other than counsel's bare assertion during opening statements on Father's motion to terminate child support, that Father had continuously lived in Kansas since the 1992 modification of the Decree entered in Kansas. Father concedes that in *Lewis*, the fact that a father lived in the issuing state at the time the motion addressing the duration of child support was filed did not prevent the Missouri trial court from enforcing Missouri durational law where father had not lived in the issuing state continuously.

9. Jacob had turned twenty-one by the time Father filed his motion to terminate child support. Though we acknowledge the child support award was a single award, Father could have sought modification of the award when Jacob turned eighteen based on alleged change of circumstances. He did not.